Donald L. **BONE**, Plaintiff-Appellee,

v.

**HIBERNIA BANK and Michael Shields,
Defendants-Appellants.**

No. 73–1540.

United States Court of Appeals,
Ninth Circuit.

March 4, 1974.

Moses Lasky (argued), Brobeck, Phleger & Harrison, Tobin & Tobin Law Offices, San Francisco, Cal., for defendants-appellants.

Robert L. Lieff (argued), and Donald L. Bone, pro se, of Lieff, Alexander & Wilcox, San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and JAMESON,* District Judge.

CHOY, Circuit Judge:

Donald L. Bone charges that the Hibernia Bank violated the disclosure requirements of the Truth in Lending Act, 15 U.S.C. § 1638(a) (1970), as implemented by the Federal Reserve Board's Regulation Z, 12 C.F.R. Part 226, by failing to adequately identify its method of computing the unearned, precomputed portion of the finance charge on a loan obligation in the event of the obligation's prepayment. Hibernia's disclosure statement revealed that its method of rebating such interest was "according to the 'Rule of 78's'." The district court, holding that this simple reference did not provide meaningful disclosure to the average credit consumer, granted Bone summary judgment and awarded him damages under 15 U.S.C. § 1640(a) (1970). The Bank appeals. We reverse.

On December 6, 1971 Bone received a loan of $4,000.00 for the purchase of an automobile from Hibernia's branch office in Lafayette, California. Interest on the loan was 7.51% per annum. The finance charge was precomputed at this rate for the three year duration of the loan obligation and added to the face amount of the note, for a total indebtedness of $4,479.84 which Bone promised to repay in 36 successive equal installments of $124.44 per month.

Before consummating the loan agreement, Bone told Michael Shields, the bank loan officer, of his concern about whether there would be any penalty for prepaying the obligation. Bone then questioned Shields at great length about the prepayment clause contained in Hibernia's disclosure statement which provides:

> "PREPAYMENT. If the Loan is paid in full prior to final payment date or maturity, Borrower shall receive a rebate of any precomputed interest included in the finance charge according to the 'Rule of 78's;' provided, however, that there will first be deducted therefrom the sum of $25.00."

Shields explained the meaning of this clause and described its operation in several hypothetical examples of the results obtained if the loan were prepaid at various times before maturity. Several days after receiving the loan, Bone telephoned the Bank, informed it of its alleged violation of the Truth in Lending Act, and offered to "settle his claim" against the Bank in exchange for a credit of three times the amount of the finance charge. When the Bank refused the offer, Bone, appearing *in pro. per.*, filed this action in the district court.

## THE RULE OF 78's

The Rule of 78's has been defined succinctly in the statutory language of the

---

* The Honorable William Jameson, United States District Judge for the District of Montana, sitting by designation.

California Civil Code § 1806.3 as a method in which:

> "the amount of [the] refund credit . . . represent[s] at least as great a proportion of the finance charge . . . as the sum of the periodic monthly time balances not yet due bears to the sum of all the periodic monthly time balances under the schedule of installments in the contract . . . ."

A description of the Rule's operation, however, requires somewhat greater elaboration.

The Rule of 78's is also known as the sum-of-the-digits and direct ratio methods. Under the Rule, when a loan is to be repaid in monthly installments, each month of the loan's term is assigned a digit, with the first month's digit equalling the total number of months in the agreed period of the loan. The second month is then assigned a digit one less than that of the first, the third month again one less, and so on, until the digit assigned to the last month equals (1) one. For a twelve month loan, the sum of the digits $(12 + 11 + 10 \ . \ . \ . + 1)$ of this arithmetic progression is 78.[1] This number then serves as the denominator in a fractional equation, with the numerator being the sum of the digits for those months expired at the time of the obligation's prepayment. For example, assuming a twelve month loan obligation, if the entire loan were prepaid at the end of the first month, $^{12}\!/_{78}$ of the total finance charge would be retained by the creditor. This represents a greater proportion of the finance charge than in any other month because the borrower has had the use of the entire amount of the loan for that month. At the end of the second month, $^{11}\!/_{78}$ of the finance charge would be retained since the borrower has had the use of $^{11}\!/_{12}$, or most of the loan proceeds for that month. If the borrower prepaid the entire obligation at this time, $^{23}\!/_{78}$ of the finance charge would be considered to have been earned and therefore would be retained by the creditor. At the end of six months, the creditor would be entitled to $^{57}\!/_{78}$ of the total finance charge, and the consumer in turn to $^{21}\!/_{78}$ of such charge. *See generally* W. Minrath, *Handbook of Business Mathematics*, 506–10 (2d ed. 1959); Donaldson, An Analysis of Retail Installment Sales Legislation, 19 Rocky Mt.L.Rev. 135, 151–52 (1947); Newman, Refunding Unearned Interest Under Section 108(1) of the New York Banking Law, 90 Banking L.J. 116, 125–29 (1973). As can be seen from even this simplified description, the operation of the Rule of 78's is not difficult to comprehend, but like many arithmetic formulas, it requires a somewhat lengthy exposition in order to be understood.

The results obtained by the Rule of 78's method closely approximate those of the "actuarial" method in which the rebate bears a more direct relationship to the amount of money received and the time for which it is used, and in which "true" interest yields are produced. Because the actuarial method requires the use of actuarial tables and more difficult computations, however, the more easily computed Rule of 78's method is widely used by banks and financing institutions as an acceptable substitute for the actuarial method. Donaldson, 19 Rocky Mt.L.Rev. *supra* at 151–52; Jordan and Warren, Disclosure of Finance Charges: A Rationale, 64 Mich.L.Rev. 1285, 1288–90 (1966).

## THE TRUTH IN LENDING ACT AND REGULATION Z

In 1968 Congress enacted the Consumer Credit Protection Act, 15 U.S.C. §§ 1601–1681 (1970). In the statute's first subchapter known as the Truth in Lending Act, Congress declared its purpose to be to assure to credit consumers a meaningful disclosure of credit terms, thus enabling these consumers to compare more readily the various available credit terms, and thereby avoid the uninformed

---

1. This number, of course, varies with the length of the loan's repayment period. E. g., a 6-month loan equals 21, while for a 24-month obligation the sum is 300.

use of credit. 15 U.S.C. § 1601 (1970). To implement these goals, Congress entrusted much of the construction of the Act to the Federal Reserve Board. The Board was given broad regulatory and rulemaking powers designed "to carry out the purposes" of the Act, by prescribing regulations which

> "may contain such classifications, differentiations, or other provisions . . . as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith."

15 U.S.C. § 1604 (1970). The Federal Reserve Board was thereby empowered to require such disclosure of credit terms as in its judgment was necessary to fulfill the objectives of the Act.

Pursuant to this congressional mandate, the Board promulgated its Regulation Z, 12 C.F.R. Part 226. The section of these regulations which Hibernia is charged with violating provides that the lending institution's disclosure statement to the borrower shall contain

> "[i]dentification of the method of computing any unearned portion of the finance charge in the event of prepayment of the obligation and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to the obligation or refunded to the customer."

12 C.F.R. § 226.8(b)(7).

Bone does not contend that Hibernia failed to disclose the amount of the charge to be deducted from any rebate, since the $25.00 amount is plainly revealed in the bank's disclosure statement. It should also be noted that neither the Act nor the regulations require that a lender rebate any portion of the unearned finance charge in the event of the obligation's prepayment. Nor do

they specify which method, if any, is to be used in computing such rebate. However, in the event that it does rebate such finance charges, the lending institution, in order to comply with this regulation, must "identify" the method used in computing the rebate.

It seems evident that Regulation Z has been drafted in precise, technical language. Where the Federal Reserve Board has decided that in order to provide adequate disclosure a term must be explained or described, it has required such an explanation or description. *See, e. g.,* 12 C.F.R. § 226.8(b)(6).[2] Therefore, we cannot assume that as a result of mere oversight the Board required only the "identification" of the method in this instance. Although this term also seems explicit in its requirements, however, we find its connotations ambiguous since it suggests either of two plausible meanings.

"Identification" could mean, as the district court held, that the method of rebating unearned interest must be one which is understood by the average borrower, in order that it in fact be "identified." Simple reference to the Rule of 78's does not serve this function, for we daresay that its meaning is known to virtually no credit consumers. As the district court stated, "[t]here must be a recognized nexus between the words used and some acceptable referent, or else the words used are at large and divorced from both reality and meaning." On the other hand, "identification" could mean that reference to the method by name alone will suffice for purposes of the regulation, despite the esoteric nature of that which is being so "identified." Two other district courts have impliedly so held when determining the Rule of 78's to be adequate "identification." Kenney v. Landis Financial Group, 349 F.Supp. 939, 946–947 (N.D. Iowa 1972); Richardson v. Time Premium Co., 4 CCH Consumer Credit Guide ¶ 99,272 (S.D.Fla.1971).

---

2. "A *description* of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mort-

gage) with an *explanation* of the method of computation of such penalty and the conditions under which it may be imposed." (emphasis added)

■ Our concern here is not with the construction of a statute, but rather with the construction of an administrative regulation issued pursuant to statutory directive. When interpreting an administrative regulation whose meaning is in doubt, we must necessarily look to the construction given the regulation by the agency responsible for its promulgation. Bowles v. Seminole Rock Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L. Ed. 1700 (1945). While lacking the force of law and certainly not controlling upon the courts,

> "the rulings, interpretations and opinions [of that agency] . . . do constitute a body of experience and informed judgment to which courts . . . may properly resort for guidance. The weight of such a judgment in a particular case will depend on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); see Gerlach v. Allstate Insurance Co., 338 F.Supp. 642, 648–649 (S.D.Fla.1972). Great deference is especially due the Federal Reserve Board's construction of its own Regulation Z because of the important interpretive and enforcement powers granted this agency by Congress under the Truth in Lending Act. Taylor v. R. H. Macy & Co., 481 F.2d 178 (9th Cir.), cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973); see also Douglas v. Beneficial Finance Co., 469 F. 2d 453 (9th Cir. 1972).

Prior to the district court's decision in this case, the Federal Reserve Board had not issued any formal interpretation of its rebate method "identification" requirement. However, individual members of the Board staff had written informal advisory letters to inquiring creditors, to assist them in complying with the complex requirements of Regulation Z. In these letters the Board's position was consistently stated as requiring only reference by name to commonly known rebating methods. For example, on April 17, 1970, Milton W. Schober, assistant director of the Board, wrote to an inquiring lender regarding the Rule of 78's.

> "In view of the length and difficulty of a mathematical statement of the Rule, it has been our position that a statement to the effect that 'any rebate will be computed under the Rule of 78's' will comply with Section 226.-8(b)(7) . . . . The creditor would not be required to set forth a narrative or mathematical formula of computation to explain the Rule on his disclosure statement, although fairness and good business would suggest that he should probably inform the customer of the way the Rule works if a rebate does become involved in the transaction and the customer requests the explanation." [3]

Similarly, in a handbook issued by the Board of Governors of the Federal Reserve Board entitled "What You Ought to Know About Truth in Lending," the Rule of 78's was mentioned several times as an example of an "identified" method of rebating any unearned finance charges within the meaning of Regulation Z. While these letters and the pamphlet represent only unofficial views of the Board, they nonetheless clearly indicate the Board's construction of its "identification" requirement. In order to further clarify its position, however, on April 30, 1973, the Board issued a formal interpretive rule, 12 C.F.R. § 226.818, 38 Fed.Reg. 12.202, pursuant to the publication requirements of 5 U.S.C. § 553(d) (1970). 12 C.F.R. § 226.-818(c) states in part: "[T]he requirement of rebate 'identification' is satisfied simply by reference by name to the

3. *Quoted in* 4 CCH Consumer Credit Guide ¶ 30,532. See also Federal Reserve Board Advisory Letter of March 6, 1970, by Kenneth A. Kenyon, deputy secretary, *quoted in* 4 CCH Consumer Credit Guide ¶ 30,522;

Federal Reserve Board Advisory Letter of July 29, 1970, by Tynan Smith, assistant director, *quoted in* 4 CCH Consumer Credit Guide ¶ 30,565.

'Rule of 78's' or other method, as applicable." Thus, there can be no doubt of the Board's interpretation of the word "identification."

■ We find the Board's reasons for so limiting the identification requirement to be persuasive. In a statement of August 6, 1971 explaining the rationale for its decision, the Board of Governors' vice chairman, J. L. Robertson, stated:

> "Following the June hearings before the National Commission on Consumer Finance, we again studied the problem of disclosure of the method of rebating unearned finance charges. We agree that a simple explanation as to what the Rule of 78ths encompasses would certainly be more meaningful to the consumer than the statement that rebates are figured on the Rule of 78ths. Unfortunately, we have found no simple way to solve this problem. The alternative would seem to require a lengthy and complicated mathematical statement which, we suspect, would be equally as uninformative to the consumer, and would have the added disadvantage of further complicating the disclosure statement and detracting from other important disclosures. Accordingly, we feel at this time that our present position is the best of admittedly unsatisfactory alternatives."

We believe that it is precisely these kinds of policy decisions about the disclosure statement, requiring the weighing and balancing of the various available choices, that Congress entrusted to the Federal Reserve Board by granting it such broad powers. The conclusions thus reached by the Board are based upon its specialized experience and access to information, which is not likely to come to the attention of a particular judge in a given case. While reasonable minds may differ as to which alternative would best suit the purposes of the Act, "courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority." Mourning v. Family Publications Service, Inc., 411 U.S. 356, 372, 93 S.Ct. 1652, 1662, 36 L. Ed.2d 318 (1973). "This court is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers." American Telephone & Telegraph Co. v. United States, 299 U.S. 232, 236, 57 S.Ct. 170, 172, 81 L.Ed. 142 (1936); *see* Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Garza v. Chicago Health Clubs, Inc., 329 F.Supp. 936, 939 (N.D. Ill.1971).

■ Bone additionally contends that use of the Rule of 78's for computing finance charge rebates, instead of the actuarial method, constitutes a prepayment penalty charge under .12 C.F.R. § 226.-8(b)(6) (see note 2 *supra*) because the "effective annual percentage rate" varies from the stated rate of 7.51%, depending on the month of prepayment.[4] As we have mentioned, there is a slight difference in the amount of the rebate under the Rule of 78's from that of the actuarial method. Although the district court did not rule on this issue, which was raised in Bone's complaint, when granting summary judgment, we regard this contention as being clearly foreclosed, since there is no requirement that the annual percentage rate be expressed so that it takes into account future contingencies. Indeed, once disclosed, if the annual percentage rate is "rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures

---

4. In this part of his brief, Bone apparently concedes that reference to the actuarial method in the disclosure statement would be adequate "identification." But, we doubt that such reference would spark any greater degree of recognition on the part of credit consumers than does the Rule of 78's. Webster's New International Dictionary (2d ed. 1966) defines "actuarial" as: "Of or pertaining to actuaries; determined by actuaries; as the actuarial value of an annuity." "Actuary" is further defined as: "A registrar or clerk; used originally in courts of civil law jurisdiction, but in Europe used for a clerk or registrar generally. 2. One whose business or profession is to calculate insurance risks and premiums."

. . . ." it is not a violation of the Act. 15 U.S.C. § 1634 (1970). Otherwise, subsequent events such as late payment charges, Christmas deferrals or prepayment of the obligation, would each require a recomputation of the annual percentage rate. This result would be entirely unwieldy and impractical. Our conclusion is again reinforced by the Federal Reserve Board's April 30, 1973 interpretive ruling which specifically declares that a rebate calculated according to the Rule of 78's does not constitute a penalty charge for prepayment that must be disclosed. 12 C.F.R. § 226.818(b), 38 Fed.Reg. 12.202; see also Uniform Consumer Credit Code § 2.209 (Official Comment).

In conclusion, we hold that Hibernia's disclosure statement was in compliance with the applicable section of Regulation Z, which required only "identification" of the rebate method. This requirement was satisfied by reference to the Rule of 78's and the district court erred in requiring more. Accordingly, the judgment is reversed and remanded with instruction to dismiss the complaint. The parties shall bear their own costs.

Reversed and Remanded With Instruction.