**Norlinda D. PHILBECK, Plaintiff-Appellee,**

**v.**

**TIMMERS CHEVROLET, INC. and General Motors Acceptance Corporation, Defendants-Appellants.**

No. 73-3586.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1974.

Rehearing and Rehearing En Banc Denied Oct. 3, 1974.

Joseph W. Crooks, Atlanta, Ga., for Timmers Chevrolet, Inc.

A. Mims Wilkinson, Jr., R. Byron Attridge, G. Lemuel Hewes, Atlanta, Ga., for General Motors Acceptance Corp.

John Harris Paer, Fred L. Cavalli, Atlanta, Ga., for plaintiff-appellee.

W. Rhett Tanner, Andrew J. Britton, Atlanta, Ga., for National Consumer Finance Assn. and Georgia Consumer Finance Assn., amicus curiae.

W. Stell Huie, Terrence Lee Croft, Lawrence L. Thompson, Atlanta, Ga., for Ga. Bankers' Assn., amicus curiae.

Steven Gottlieb, Atlanta, Ga., for Atlanta Legal Aid Society, Inc., amicus curiae.

Before MOORE *, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

This case presents a significant question concerning the applicability of disclosure provisions of the Truth in Lending Act to the term of optional credit life insurance sold in connection with a closed-end consumer credit transaction, when the term of the insurance coincides with the term of the credit obligation.

On December 31, 1971, Norlinda D. Philbeck executed a written contract with Timmers Chevrolet, Inc., to purchase an automobile for a cash price of $4,701.57, $2,850 of which was to be financed over a 36-month period.[1] Subsequently, Philbeck's contract with Timmers was purchased by and assigned to General Motors Acceptance Corporation.

The contract Philbeck signed consummating the credit sale is a standard GMAC form entitled "Instalment Sale Contract." The face of the contract form provides for the ordinary disclosures, including unpaid balance (amount financed), finance charge, total of payments, deferred payment price, annual percentage rate, and payment schedule. Also on the face of the contract, listed under Item 4, "Other Charges," are optional provisions for the customer to choose various types of insurance associated with the ownership and financing

---

* Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

1. The remainder of the purchase price was paid by a $1,351.57 trade-in on Philbeck's old automobile and a $500 cash down payment.

of an automobile.[2] Item 4C is designated for listing the cost of creditor insurance. It is clearly indicated in capitalized, boldface type that coverage of the buyer by such creditor insurance is not required by the seller. Three types of creditor insurance are listed: "Life," "Disability (Accident and Health)," and "Other (describe)." Separate spaces are provided for listing the cost of each type of creditor insurance. The type of creditor insurance desired is to be indicated by checking an appropriate box. Below these listings is a statement in capitalized, boldface type indicating the buyer's desire to obtain the type of creditor insurance noted. Approval of the statement is affirmatively shown by the buyer's separately dating and signing Item 4C of the contract.

The purpose of obtaining credit life insurance is to cover the buyer's credit obligation during part or all of the term of the financing. The insurance is procured by and in the name of the seller or assignee of the contract.

Philbeck indicated to Timmers her desire to obtain the optional credit life insurance. On Philbeck's contract, the box denoting her desire for the life insurance was checked; and, on the same line, the premium for the insurance was disclosed as $110.12. Philbeck's approval was dated, and she separately signed Item 4C of the contract, thus affirmatively indicating her desire to obtain the credit life insurance.

Next to the line on the contract containing the designation and premium cost for credit life insurance, three asterisks direct the buyer's attention to a block on the face of the contract, approximately two thirds of the way down the page, consisting of two and one-half lines of type, in which it is noted that the life insurance is issued in accordance with the "Notice of Proposed Creditor

**2.** Item 4 of Philbeck's contract read:

4. OTHER CHARGES

*A. Cost of Required Physical Damage Insurance
BUYER MAY CHOOSE THE PERSON THROUGH WHICH THIS INSURANCE IS TO BE OBTAINED ................................. $____–0–____ (4A)

**B. Cost of Third Party Automobile Liability Insurance for buyer (Include this item if buyer has applied to an insurance company for the insurance and wishes the cost included.) This insurance is not required by seller.

BUYER MAY CHOOSE THE PERSON THROUGH WHICH THIS INSURANCE IS TO BE OBTAINED ............................... $____–0–____ (4B)

C. Cost of Creditor Insurance

COVERAGE OF THE BUYER BY ANY SUCH INSURANCE IS NOT REQUIRED BY SELLER.

| CHECK CREDITOR INSURANCE DESIRED | *** ☒ Life ........................... $ 110.12 (4C) |
| | ☐ Disability (Accident and Health) .... $ –0– (4C) |
| | ☐ Other (describe) ............... $ –0– (4C) |

BUYER'S APPROVAL: I DESIRE TO OBTAIN THE CREDITOR INSURANCE CHECKED ABOVE FOR THE BUYER PROPOSED FOR INSURANCE.

12–31–71  Signature  s/ Norlinda Philbeck
(Date)            (Buyer's Signature)            (Co-Buyer's Signature)

D. Official Fees ............................................... $____–0–____ (4D)
E. Taxes Not Included in Cash Price ............................. $____–0–____ (4E)
F. License and/or Registration Fees (Itemize) ..................... $____–0–____ (4F)
G. Certificate of Title Fee ...................................... $____–0–____ (4G)
H. Other (Describe) ........................................... $____–0–____ (4H)

Insurance on Life of Buyer" contained on the reverse side of the contract.[3] That section heading appears almost two thirds of the way down the reverse side of the contract in capitalized, boldface type. The section contains in paragraph (a) a description of the credit life insurance. In the following paragraph (b), there is notice that the term of the life insurance is coextensive with the term of the credit obligation.[4] The provision reads in full:

(b) If the insurance becomes effective, the term thereof shall commence on the date of this contract and will (in absence of default on instalment payments) continue until the date on which the unpaid balance of the obligation hereunder is or becomes paid in full, unless the insurance is terminated earlier in accordance with the terms and conditions set forth in the policy or certificate issued by the aforesaid insurer.[5]

**3.** The block on the face of the contract provides:

\*\*\*

> According to terms and conditions set forth in policy or certificate of insurance issued by the insurer as checked below and in "Notice of Proposed Creditor Insurance on Life of Buyer" contained on reverse of buyer's copy of contract.
>
> Buyer Proposed For Life Insurance: The person whose name appears on line A below (co-buyer, if any, on line B, when buyer is a corporation or partnership).

**4.** We note the following exchange between Timmers' counsel and Philbeck at the deposition of Philbeck:

Q. [by counsel for Timmers] In looking at this instrument designated Exhibit B to the complaint and what we will call the sales contract, did you execute this line here right under the insurance question?

A. [by plaintiff] I signed that question.

Q. Did you read it?

A. I read it where it says "I desire to obtain the creditor insurance checked above."

Q. Did you look at the amount?

A. I glanced at the hundred ten dollars and I said "That's too much." And they said, "That's what it costs."

Q. And you signed it?

A. Yes.

Q. And you understood that would be insurance for the life of the payments, 36 months.

A. I understood it would be life insurance for me.

Q. For what purpose?

A. That if I died, they'd pay for the car.

Q. And this would be during the term of your payments, 36 months?

A. Right. Except it would not extend beyond 36 months because there wouldn't be any payments beyond that.

**5.** The "Notice of Proposed Creditor Insurance on Life of Buyer" states in full:

NOTICE OF PROPOSED CREDITOR INSURANCE ON LIFE OF BUYER — If a charge for Creditor Insurance on the life of the buyer is included in 4C on the face of this contract,

(a) The buyer acknowledges that said charge is included therein pursuant to his authorization, hereby confirmed, that such insurance be procured, by and in the name of the seller or of the assignee of this contract, from the insurer designated in said item 4C, against the contingency of the buyer's death occurring while the insurance is in force during the term thereof referred to in paragraph (b) below, such insurance to be for an amount equal to, and the proceeds thereof to be payable to and applied, by the seller or assignee in payment of, so much of the unpaid balance of the obligation hereunder as does not exceed the amount set forth in said item 4C as the maximum amount of insurance under this contract, provided, however, that in the event the buyer has prior hereto incurred instalment obligations under another contract or other contracts containing a charge for insurance authorized to be procured on his life from the same insurer as is designated on the face hereof, the aggregate amount of insurance to the benefits of which the buyer may become entitled under such several contracts, including this one, shall be limited to the amount designated on the face hereof as the maximum aggregate amount of insurance payable by the said insurer under such several contracts, notwithstanding that at the time of the buyer's death the aggregate of the unpaid balance of the obligation under each of such several contracts or the aggregate of the aforesaid maximum amount of insurance under each thereof, whichever is the lesser, exceeds the aforesaid maximum aggregate amount of insurance under such several contracts, all in accordance with the terms and conditions set forth in the policy or certificate of insurance issued by the aforesaid insurer.

Within a month of her purchase, Philbeck became dissatisfied with the terms of the contract, particularly the annual percentage (interest) rate for financing the car and the credit life insurance premium. She contacted the Finance Manager of Timmers and requested cancellation of her optional credit life insurance policy. This was done, and the unused portion of the premium was refunded to her.

On June 5, 1972, Philbeck filed this action alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226 (1973), and Federal Reserve Board Interpretation § 226.402, 12 C.F.R. § 226.-402 (1973), promulgated thereunder, naming Timmers and GMAC as defendants.[6] The district court granted summary judgment to Philbeck. We are concerned only with determining whether disclosure is required of the term of the optional credit life insurance chosen by Philbeck, where the term is the same as the credit obligation; and, if required, what the applicable disclosure standard is. The district court held that the term of the life insurance must be disclosed to the customer and that the appropriate standard of disclosure is the specific disclosure section of Regulation Z, § 226.8(a), 12 C.F.R. § 226.8(a), which, if applied here, requires disclosure of the term on the face of the credit document.[7] Thus, the court below found that disclosure of the term of the optional credit life insurance only on the reverse side of the Philbeck contract constituted noncompliance.[8] We reverse.

(b) If the insurance becomes effective, the term thereof shall commence on the date of this contract and will (in absence of default on instalment payments) continue until the date on which the unpaid balance of the obligation hereunder is or becomes paid in full, unless the insurance is terminated earlier in accordance with the terms and conditions set forth in the policy or certificate issued by the aforesaid insurer.

6. In her complaint, Philbeck contended that Timmers and GMAC had violated the Act by failing to disclose several items required to be disclosed or by disclosing them in an improper manner in a "Retail Buyer's Order" and the "Instalment Sale Contract" signed by her. Philbeck further alleged that Timmers willfully and knowingly failed to make these disclosures and that GMAC had knowledge of the facts alleged. Philbeck requested statutory damages from each defendant of $1,000 and $15,000 in punitive damages from Timmers, plus attorney's fees, costs, and interest.

7. There are two sections of Regulation Z containing disclosure requirements relevant to our discussion. Section 226.6, 12 C.F.R. § 226.6, the general disclosure provision, states in pertinent part:

§ 226.6 General disclosure requirements.

(a) *Disclosures; general rule.* The disclosures required to be given by this Part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections. . . .

The "specific" disclosure section, § 226.8, 12 C.F.R. § 226.8, provides that in certain instances, enumerated in succeeding subsections, the disclosure requirements stated in subsection (a) apply. Section 226.8(a), 12 C.F.R. § 226.8(a) reads:

§ 226.8 Credit other than open end—specific disclosures.

(a) *General rule.* Any creditor when extending credit other than open end credit shall, in accordance with § 226.6 and to the extent applicable, make the disclosures required by this section with respect to any transaction consummated on or after July 1, 1969. Except as provided in paragraphs (g) and (h) of this section, such disclosures shall be made before the transaction is consummated. At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. All of the disclosures shall be made together on either

(1) The note or other instrument evidencing the obligation on the same side of the page and above or adjacent to the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction.

8. The findings of the court below were: (1) that the "Instalment Sale Contract" and not the "Retail Buyer's Order" was the agreement to extend credit to which the disclo-

■ It is the declared congressional purpose of the Truth in Lending Act to assure consumers a meaningful disclosure of credit provisions, thus to enable the consumer to compare more readily various available credit terms and to avoid the uninformed use of credit. Truth in Lending Act § 102, 15 U.S.C. § 1601; *see* Mourning v. Family Publications Service, Inc., 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973).[9] "To accomplish its desired objective, Congress determined to lay the structure of the Act broadly and to entrust its construction to an agency with the necessary experience and resources to monitor its operation." Mourning v. Family Publications Service, Inc., *supra*, at 364, 93 S.Ct. at 1658. Section 105 of the Act, 15 U.S.C. § 1604, thus delegated to the Federal Reserve Board broad regulatory and rulemaking powers to effectuate the purposes of the Act. *See* Bone v. Hibernia Bank, 9 Cir., 1974, 493 F.2d 135, 138.[10]

■ In deciding the question whether disclosure of the term of op-tional credit life insurance is required when the policy runs for the full term of the credit obligation, we deal primarily with four sources of law and interpretation: the Truth in Lending Act itself; Regulation Z, which was promulgated by the Board pursuant to the broad powers granted it under section 105 of the Act; the Federal Reserve Board Interpretations of Regulation Z, 12 C.F.R. §§ 226.-201 et seq.; and the Federal Reserve Board staff opinions, which explain the provisions of the three foregoing authorities, usually in answer to a query regarding a particular factual situation. The three latter authorities, though not binding on the Court, are entitled to great weight, for they constitute part of the body of "informed experience and judgment of the agency to whom Congress delegated appropriate authority." *See* Mourning v. Family Publications Service, Inc., *supra*, at 372, 93 S.Ct. at 1662; Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 165, 89 L.Ed. 124 (1944); Allen M. Campbell Co. Gen. Con., Inc. v. Lloyd Wood Const. Co., 5

sure requirements of the Act apply; (2) that the Instalment Sale Contract was in complete compliance with the Truth in Lending Act and Regulation Z but that the disclosure of the cost of the optional credit life insurance specifically did not comply with Federal Reserve Board Interpretation § 226.402; (3) that when the cost of optional credit life insurance is not included as part of the finance charge, Interpretation § 226.-402 requires that the term of the insurance be disclosed to the customer; (4) that the term of the insurance was disclosed in full on the reverse side of the Instalment Sale Contract; (5) that the appropriate standard for evaluating the adequacy of disclosure of the credit life insurance term was the specific disclosure provisions of Regulation Z, § 226.8(a), 12 C.F.R. § 226.8(a), which require disclosure on the document's face; and that, therefore, disclosure on the reverse side constituted noncompliance; and (6) that GMAC was a "creditor" within the meaning of the Act and jointly liable with Timmers for any violation of the Act.
Philbeck was awarded $1,000 in statutory damages and $2,520 in attorney's fees by the court below.

9. Truth in Lending Act § 102, 15 U.S.C. § 1601, states:

§ 1601. Congressional findings and declaration of purpose
The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

10. Truth in Lending Act § 105, 15 U.S.C. § 1604, provides:
§ 1604. Rules and regulations
The Board shall prescribe regulations to carry out the purposes of this subchapter. These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

Cir., 1971, 446 F.2d 261, 265; Bone v. Hibernia Bank, *supra*, 493 F.2d at 140. We are not free to substitute our "own discretion for that of administrative officers who have kept within the bounds of their administrative powers." American Telephone & Telegraph Co. v. United States, 299 U.S. 232, 236, 57 S.Ct. 170, 172, 81 L.Ed. 142 (1936); *see* Taylor v. R. H. Macy & Company, Inc., 9 Cir., 1973, 481 F.2d 178, 180, cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L. Ed.2d 473; Roy Bryant Cattle Co. v. United States, 5 Cir., 1972, 463 F.2d 418, 420. Furthermore, the construction which the Federal Reserve Board gives its own Regulation Z in its Interpretations and staff opinions is especially entitled to great deference "because of the important interpretive and enforcement powers granted this agency by Congress" in this highly technical field. Bone v. Hibernia Bank, *supra*, 493 F.2d at 139; *see, e. g.,* Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L. Ed.2d 616 (1965); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); Allen M. Campbell Co. Gen. Con., Inc. v. Lloyd Wood Const. Co., *supra,* 446 F.2d at 265.[11]

■ The specific language of the Truth in Lending Act, in section 106(b), 15 U.S.C. § 1605(b), refers, in the context of this case, only to "[c]harges or premiums for credit life" insurance and makes no specific mention of the term of the insurance. The section requires that such costs be included in the finance charge unless it is clearly disclosed in writing to the consumer that coverage of the debtor by insurance is not a factor in the approval of credit extension, and the buyer gives affirmative written indication that he or she desires insurance after its cost has been disclosed.[12] The corresponding section

11. *See generally* Allen M. Campbell Co. Gen. Con., Inc. v. Lloyd Wood Const. Co., *supra,* 446 F.2d at 265:

[I]t is an axiom of judicial review that an administrative agency's interpretation of its own regulations must be accorded the greatest deference. Udall v. Tallman, 1965, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed. 2d 616, reh. denied, 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283; Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702. When, as here, that interpretation obviously incorporates quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme, judges should be particularly reluctant to substitute their personal assessment of the meaning of a regulation for the considered judgment of the agency. If the agency interpretation is merely one of several reasonable alternatives, it must stand even though it may not appear as reasonable as some other. (Footnotes omitted.)

12. Section 106(b) is applicable to charges or premiums for accident and health insurance, as well as credit life insurance, when such insurance is written in connection with any consumer credit transaction. Section 106(b) provides:

*Life, accident, or health insurance premiums included in finance charge*

(b) Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless

(1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof.

Similarly, section 106(c), 15 U.S.C. § 1605 (c), permits charges or premiums for insurance against loss of or damage to property or against liability to be excluded from the finance charge when the borrower is entitled to choose the person through which the insurance is to be obtained and the cost of the insurance is disclosed to him. Section 106(c) reads:

*Property damage and liability insurance premiums included in finance charge*

(c) Charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, shall be included in the finance charge unless a clear and specific statement in writ-

in Regulation Z, § 226.4(a)(5), 12 C.F.R. § 226.4(a)(5), is similarly phrased and likewise makes no specific mention of the term of insurance.[13]

Here, the cost of the life insurance premium was excluded from the finance charge in direct compliance with section 106(b) of the Act and section 226.-4(a)(5) of Regulation Z. Compliance by defendants with the provisions of those sections was complete, as the district court properly found, because issuance of the insurance was purely optional and not necessary to obtain the extension of credit and this was clearly and conspicuously disclosed on the face of the Philbeck contract. The court below, however, went on to find that Federal Reserve Board Interpretation § 226.402 also requires disclosure on the face of the contract of the term of the life insurance when the policy runs for the full term of the credit obligation. *See* pages 975–976 and notes 7–8 *supra*. Interpretation § 226.402 provides in full:

§ 226.402 Term of insurance coverage

(a) Under § 226.4(a)(5) and (6) certain disclosures of insurance premium costs, if applicable, are required. The question arises as to whether such amounts of cost disclosed must include the cost of insurance for the full term of the transaction.

(b) Under § 226.4(h) the cost of insurance for the full period of insurance coverage which the creditor will require shall be disclosed if the cost of the insurance premium is required to be included in the finance charge. However, if the cost of insurance is not required to be included in the finance charge, the cost to be disclosed need only be the cost of premiums for the term of the initial policy or policies written in connection with the transaction, accompanied by a statement of the type of insurance and the term thereof. (Interprets and applied 15 U.S.C. 1605) [34 F.R. 7608, May 13, 1969]

The district court derived its result from the last sentence of the interpretation.[14]

■ We disagree with the district court's reading of the Interpretation. In our view, the Interpretation is inapplicable to the circumstances here and requires disclosure of the term of the insurance only in those instances in which the term of the insurance is less than the term of the credit obligation.[15]

Subsection (a) of Interpretation § 226.402 specifies that the Interpretation is directed only to the question whether the disclosures of insurance premium costs required under section 226.4(a)(5)

---

ing is furnished by the creditor of the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

In the only legislative history on this particular portion of the Act, Representative Sullivan noted that "[i]f this insurance is optional, however, [creditors] merely have to list the cost in dollars and cents." 114 Cong.Rec. 1433 (1968).

13. Regulation Z, § 226.4(a)(5), 12 C.F.R. § 226.4(a)(5) provides for inclusion in the finance charge of:

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is

clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance. (Footnote omitted.)

14. The district court said:

Interpretation § 226.402 clearly requires that for the disclosure of the cost of insurance to be adequate it must be "accompanied by a statement of the type of insurance and the term thereof." . . .

. . . This disclosure must be located in compliance with the general requirements of 12 C.F.R. § 226.8.

15. The parties to this litigation do not dispute the authoritative nature of this Interpretation.

and (6) [16] of Regulation Z "must include the cost of insurance for the full term of the transaction." The manner in which the subject of the Interpretation is posed in subsection (a) reveals that the Board was concerned with disclosure of insurance costs in the situation in which the term of the insurance coverage is less than the term of the credit transaction; for in that situation the "insurance premium costs" and "the cost of insurance for the full term of the transaction" would not be the same. The consumer who desired insurance for the full term of the transaction would find it necessary either to renew the policy initially acquired or to take out an additional policy or policies, thus resulting in additional cost to the consumer. The Board was concerned with making the consumer aware of this possible additional cost. On the other hand, in the situation in which the life insurance is for the full term of the credit transaction, the total "insurance premium costs" that the consumer could possibly pay (that is, insurance for the full term of the credit obligation) and "the cost of insurance for the full term of the transaction" are one and the same. Disclosure to the consumer of the "insurance premium costs" is also disclosure to the consumer of the "cost of insurance for the full term of the transaction," and there would have been no need for the Board to answer the question whether disclosure of "insurance premium costs . . . must include the cost of insurance for the full term of the transaction." Thus, Interpretation § 226.402 is inapplicable to the situation involved here in which the life insurance is for the full term of the credit transaction.

The meaning we derive from the Interpretation is further supported by the use of the clause "the cost to be described *need only* be the cost of the premiums for the term of the *initial* policy or policies written with the transaction, accompanied by a statement of the type of insurance and the term thereof." (Emphasis added.) This language excludes the situation in which one insurance policy runs for the entire term of the credit transaction. Rather, the reference is to the transaction in which there is an "initial policy or policies" and there may be additional policies written thereafter.

The conclusion we reach from our study of Interpretation § 226.402 concerning disclosure of the term of insurance which is for the full term of the credit obligation is the same as that of a published Opinion Letter of an official of the Federal Reserve Board,[17] issued

---

16. Section 226.4(a)(6), 12 C.F.R. § 226.4(a)(6) is the section of Regulation Z which deals with inclusion in the finance charge of charges or premiums for insurance against loss of or damage to property or against liability, thus corresponding to section 106(c) of the Act, see note 12 *supra*. Section 226.4(a)(6) provides for inclusion in the finance charge of:

(6) Charges or premiums for insurance, written in connection with any credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the customer setting forth the cost of the insurance if obtained from or through the creditor and stating that the customer may choose the person through which the insurance is to be obtained. (Footnotes omitted.)

17. In its first annual report to Congress on Truth in Lending, the Board referred to correspondence with creditors and consumers as a "valuable tool" in informing the public of the law's requirements. 1969 FRB Ann. Rep. 8–9. Further cognizance was taken of the important function of these letters, when it was noted:

[T]he Board considers the present informal and flexible procedure, by which members of its staff provide opinions on regulatory provisions, an essential part of its operations. It is the Board's view that the public is entitled to rely on a formal staff opinion unless and until it is altered by the Board after formal consideration. Excerpts from FRB Letter of March 1, 1971, No. 444, by Kenneth A. Kenyon, Deputy Secretary, 4 CCH Consumer Credit Guide ¶ 30,640.

*See also* use of Federal Reserve Board Opinion Letters in Mourning v. Family Publica-

in response to a query that made specific reference to the district court opinion in this case. The Opinion Letter states that Interpretation § 226.402 was issued only to answer the question of what cost should be disclosed where policies for less than the full term of the obligation were being offered. The Letter states in pertinent part, as follows:

In May of 1969, shortly before the Regulation was to become effective, the Board was confronted with the question of what "cost" should be disclosed under these provisions [§ 226.-4(a)(5) and (6) of Regulation Z] where policies for less than the full term of the obligation were being offered. . . .

. . . . . .

. . . [W]hile the Board did indicate that the cost disclosure require-

ments could be met by disclosing the cost for less than the full term of the obligation, in such cases it believed that the consumer should be placed on notice that the quoted premium was for less than the full term of the obligation.

We believe it was not the Board's intent to add a blanket requirement to either § 226.4(a)(5) or (6) by interpretation 226.402 that in all cases in which the insurance cost is disclosed the term of the obligation must also be shown. Specifically, in our opinion the term of the insurance coverage need not be shown where the coverage is for the full term of the obligation. Excerpts from FRB Letter of October 26, 1973, No. 724, by Griffith L. Garwood, Adviser, 4 CCH Consumer Credit Guide ¶ 31,035.[18] This evaluation is

---

tions Service, Inc., *supra*, 411 U.S. at 381, 93 S.Ct. at 1666 (Douglas, J., dissenting in part), 411 U.S at 384, 386, 93 S.Ct. at 1668–1669 (Powell, J., dissenting).

18. The published text of the Opinion Letter reads:

[¶ 31,035] Disclosure of Insurance Term
This is [on] your letter of August 27, 1973, in which you requested the staff views on the meaning of interpretation 226.402 [¶ 3525.10] of Regulation Z. Specifically, in reference to Philbeck v. Timmers Chevrolet, Inc. (N.D.Ga.1973.) (CCH Consumer Credit Guide ¶ 98,978), you asked whether it was the Board's intent by interpretation 226.402 to require that the term of credit life insurance be shown in connection with the disclosures under § 226.4(a)(5) [¶ 3518] when that insurance is written for the full term of the obligation. The staff believes that it is important to respond to your question in view of the possible ambiguity of the language in the interpretation, as well as the questions raised by the *Philbeck* decision regarding the adequacy of the disclosures presently used by thousands of creditors throughout the nation.

Section 106(b) [¶ 3010] of the Truth in Lending Act permits the premiums for credit life, accident or health insurance which is written in connection with a consumer credit transaction to be excluded from the finance charge if the insurance is not required, this fact is disclosed, and the borrower elects to receive the coverage after disclosure of the cost thereof.

Likewise, § 106(c) [¶ 3010] permits the premiums for insurance against loss of or damage to property or against liability to be excluded from the finance charge where the borrower is entitled to choose the person through which the insurance is to be obtained, and the cost of the insurance is disclosed to him. The corresponding provisions in § 226.4(a)(5) [¶ 3518] and (6) [¶ 3518] of Regulation Z likewise require the "cost" of the insurance to be disclosed.

In May of 1969, shortly before the Regulation was to become effective, the Board was confronted with the question of what "cost" should be disclosed under these provisions where policies for less than the full term of the obligation were being offered. This might occur, for example, in the case of property insurance where the policy would be written for only a few years at a time, and where the premium would be adjusted from time to time thereafter in connection with subsequent purchases of insurance. Moreover, in some cases, property insurance might not be required for the full term of the obligation. Likewise, in some cases, credit insurance (particularly mortgage insurance) may be written for less than the full term of the obligation. In such circumstances the question arose as to what "cost" should be disclosed to meet the provisions of § 226.4(a)(5) and (6). Interpretation 226.402 was issued to answer that question.

The issue was framed in the opening paragraph of interpretation 226.402 as

compelled not only by reference to relevant authorities [19] but also by the sense of the circumstances. The consumer who chooses credit life insurance is concerned with whether it will be necessary to take out a second insurance policy (or more) in order to complete the term of the credit obligation, since this would increase the consumer's cost of insurance coverage for the full term of the credit obligation. By application of the disclosure requirements of Interpretation § 226.402 to the situation in which the term of the initial insurance policy is less than the full term of the credit transaction, the consumer is assured of being placed on notice that the premium shown for insurance is not the total cost of insurance coverage for the full term of the credit obligation. But where, as in this case, the term of the insurance is the same as the term of the credit obligation, the premium for insurance shown on the face of the contract is the maximum possible cost of insurance for the consumer and the coverage for that cost is the maximum possible.[20] Thus, the consumer is fully informed and protected because he or she will not have to pay more than the insurance premium shown for insurance during the full term of the contract.[21] To require that such disclosure be made on the face of a contract would not be meaningful disclosure such as would further the goals of the Truth in Lending Act.[22]

Reversed.

"whether such amounts of cost disclosed must include the cost of insurance for the full term of the transaction." The answer was given that where the cost of insurance is not required to be included in the finance charge the .cost to be disclosed need only be the cost for the term of the "initial" policy or policies, as long as accompanied by a statement of the type of insurance and the term. In other words, while the Board did indicate that the cost disclosure requirements could be met by disclosing the cost for less than the full term of the obligation, in such cases it believed that the consumer should be placed on notice that the quoted premium was for less than the full term of. the obligation.

We believe it was not the Board's intent to add a blanket requirement to either § 226.4(a)(5) or (6) by interpretation 226.-402 that in all cases in which the insurance cost is disclosed the term of the obligation must also be shown. Specifically, in our opinion the term of the insurance coverage need not be shown where the coverage is for the full term of the obligation.

The author of this Opinion Letter was Griffith L. Garwood, Adviser, Division of Supervision and Regulation, Board of Governors of the Federal Reserve System. Mr. Garwood represented the Federal Reserve Board at Truth in Lending oversight hearings held last year by the Subcommittee on Consumer Affairs, House Committee on Banking and Currency. CCH Instalment Credit Guide, Report No. 125, at 8–9 (August 2, 1973). *See also* Garwood, Truth in Lending—A Regulator's View, 29 Bus.Law. 193 (1973).

19. Philbeck challenges the reliability of Federal Reserve Board Opinion Letters and, in doing so, relies on Thomas v. Myers-Dickson Furniture Company, 5 Cir., 1973, 479 F.2d 740, 747, in which this Court declined to follow a suggestion made in an Annual Report of the Board that pointed out a possible ambiguity in the Truth in Lending statute and suggested, without analysis, what was the "more likely" meaning. That situation, however, the Board suggesting the "more likely" meaning of the bare statute passed by Congress, is a far cry from what we deal with here. Here, the Board, in response to a specific problem, has issued an Opinion Letter analyzing, in some detail, its own official Interpretation of Regulation Z, which had been promulgated by the Board pursuant to its authority under the Act.

20. By way of analogy, we note that in a situation similar to that discussed in Interpretation § 226.402, the Board requires that the date upon which the finance charge begins to accrue must be disclosed only "if different from the date of the transaction." Regulation Z, § 226.8(b)(1), 12 C.F.R. § 226.-8(b)(1).

21. *See* note 4 *supra.*

22. *See generally* Andrucci v. Gimbel Brothers, Incorporated, W.D.Pa., 1973, 365 F. Supp. 1240, 1243:
[T]he obvious intent of Congress was to set standards by which to achieve meaningful "truth-in-lending" and not to deviously set traps by which windfalls could be reaped by fanciful lawyers.