416 F.Supp. 309 (1976)
David GANTT and Phyllis Gantt, Plaintiffs,
v.
COMMONWEALTH LOAN COMPANY, a Delaware Corporation, d/b/a Beneficial Finance Company, Defendant.
No. 75-454C(1).
United States District Court, E. D. Missouri, E. D.
May 10, 1976.
*310 George S. Newman, Allan F. Stewart, The Legal Aid Society of the City and County of St. Louis, Clayton, Mo., for plaintiffs.
John O. Hichew, David Wells, Thompson & Mitchell, St. Louis, Mo., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, Chief Judge.
This matter was tried to the Court with a jury. The Court has been duly informed by briefs, exhibits, depositions, and testimony.

Findings of Fact
1. Plaintiffs, David Gantt and Phyllis Gantt, are residents of Overland, St. Louis County, Missouri.
2. Defendant, Commonwealth Loan Company, is a Delaware corporation, doing business in Missouri as Beneficial Finance Company, engaged in the business of lending money and extending credit in the County of St. Louis and State of Missouri. Defendant operates an office at 9021 Page Boulevard, Overland, in St. Louis County, Missouri, through which it conducts its lending and credit extension business.
3. Plaintiffs and defendant entered into four separate and distinct consumer loan transactions, one each on December 5, 1973, May 24, 1974, November 20, 1974, and February 28, 1975.
4. The December 5, 1973, consumer loan transaction was refinanced and paid in full by the May 24, 1974, consumer loan transaction; the May 24, 1974, consumer loan transaction was refinanced and paid in full by the November 20, 1974, consumer loan transaction; the November 20, 1974, consumer loan transaction was refinanced and paid in full by the February 28, 1975, consumer loan transaction.
5. In connection with each of the four consumer loan transactions between plaintiffs and defendant, the parties executed disclosure statements which contained clear and conspicuous language stating that in the event of prepayment of each of said consumer loans that portion of the finance charge which was unearned would be refunded to the borrowers, as computed by "the Direct Ratio Refund Method, generally known as the Rule of 78ths."
6. When each of the said loans was refinanced and paid in full, defendant credited that portion of the finance charge which was unearned, as calculated by the Rule of 78's, to the outstanding amount then due and owing, pursuant to each of said loan transactions.
7. On each of the disclosure statements executed in connection with the consumer loan transactions of December 5, 1973, May 24, 1974, and November 20, 1974, plaintiff David Gantt affirmatively indicated his desire for credit disability insurance and credit life insurance by checking, signing, and dating the appropriate boxes and spaces on the disclosure statements, after having the cost and terms of insurance disclosed to him. On the disclosure statement executed in connection with the consumer loan transaction of February 28, 1975, Mr. Gantt similarly indicated that he did not desire credit disability or credit life insurance.
8. Plaintiff David Gantt was insured in connection with the consumer loan transactions of December 5, 1973, May 24, 1974, and November 20, 1974, between the parties. Mr. Gantt was not insured in connection with the consumer loan transaction of February 28, 1975, between the parties.
9. Plaintiff Phyllis Gantt was not insured in connection with any of the consumer loan transactions between the parties. On the consumer loan transaction of November 20, 1974, Ms. Gantt mistakenly signed her name opposite the box labeled "I desire credit disability insurance." It was the intent of both plaintiffs and defendant at that time that plaintiff David Gantt sign *311 opposite the box for credit disability insurance and that plaintiff Phyllis Gantt sign only on the line labeled "Co-borrower."
10. The credit insurance which plaintiff David Gantt obtained in connection with each of the three consumer loan transactions between the parties noted above was optional and not a requirement of plaintiffs to obtain the loans, and such information was clearly and conspicuously noted on the disclosure statements executed by the parties.
11. Pursuant to the terms of a promissory note executed by plaintiffs in favor of defendant on February 28, 1975, in connection with the consumer loan transaction of that date, the total sum of three thousand, forty-nine dollars and ninety-four cents ($3,049.94) is now due and owing from plaintiffs to defendant.

Conclusions of Law
1. This Court has jurisdiction pursuant to section 130(e) of the Truth in Lending Act, 15 U.S.C. § 1640(e) (hereinafter the Act).
2. Defendant Commonwealth Loan Company is a creditor as defined in section 103(f) of the Act, 15 U.S.C. § 1602(f), and in Federal Reserve Board Regulation Z, 12 C.F.R. § 226.2(m), promulgated pursuant to the Act.
3. Plaintiffs allege that defendant has violated the Act and Regulation Z by failing to include the cost of credit disability and credit life insurance obtained by plaintiff David Gantt in the finance charge disclosed to plaintiff Phyllis Gantt.
4. Section 106 of the Act, 15 U.S.C. § 1605(b), and 12 C.F.R. 226.4(a)(5) required that charges for insurance coverage written in connection with a credit transaction be included in the finance charge unless (1) the coverage is not a prerequisite for obtaining credit and this fact is clearly and conspicuously disclosed in writing to the customer; and (2) coverage can be obtained only after the customer, upon written disclosure of the cost of the insurance, gives specific affirmative written indication of his desire for such insurance.
5. Compliance with sections 1605(b) and 226.4(a)(5) does not require the signature of both or all borrowers on the insurance authorization. Only the co-borrower who is himself insured need sign the authorization to allow the exclusion of the insurance premiums from the finance charge. Mason v. General Finance Corp. of Virginia, 401 F.Supp. 782 (E.D.Va.1974), appeal docketed, No. 75-2263 (4th Cir., Nov. 26, 1975); Weaver v. General Finance Corp., Civ. No. 18399 (N.D.Ga., August 29, 1975), aff'd on other grounds, 528 F.2d 589 (5th Cir. 1976); see Federal Reserve Board Letters 624 and 625 of August 9, 1972, CCH Consumer Credit Guide [1969-1974 Transfer Binder] ¶ 30,873 and ¶ 30,874.
6. Since only plaintiff David Gantt was insured in connection with the consumer loan transactions between the parties, only he was required to give affirmative written authorization for insurance coverage on the disclosure statements. A separate computation of the finance charge disclosed to the uninsured co-obligor, plaintiff Phyllis Gantt, was not required. The disclosure statements executed by the parties were, therefore, in compliance with sections 1605(b) and 226.4(a)(5) with respect to the disclosure of the costs of credit insurance.
7. Although the Act contains no provisions directly regulating the prepayment of obligations, Regulation Z has three subparagraphs dealing with the required disclosures upon prepayment of an obligation which is other than open end.
(a) 12 C.F.R. § 226.8(b) provides as follows:
"(b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:
". . .
"(6) A description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mortgage) with an explanation of the method of computation of such penalty and the conditions under which it may be imposed.

*312 "(7) Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed."
(b) 12 C.F.R. § 226.8(j) provided in pertinent part as follows:
"If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirements of this part. For the purpose of such disclosure, any unearned portion of the finance charge which is not credited to the existing obligation shall be added to the new finance charge and shall not be included in the new amount financed."
8. Plaintiffs allege that since the Rule of 78's yields an amount of unearned finance charge less than the amount computed by the more accurate actuarial method, defendant in its use of the Rule of 78's has violated the three above sections of Regulation Z. Specifically, plaintiffs argue that the Rule of 78's constitutes a prepayment penalty which should have been disclosed as such under section 226.8(b)(6); that the difference between the actuarial rebate and one calculated by the Rule of 78's is an amount deducted from the unearned portion of the finance charge which should have been disclosed under section 226.8(b)(7); and that the difference between the actuarial rebate and the Rule of 78's rebate is an amount of unearned interest not credited upon refinancing which should have been included in the new finance charge and not the new amount financed under section 226.8(j). Plaintiffs also allege that defendant's use of the Rule of 78's caused an understating of the annual percentage rate in violation of section 226.5(b); an understating of the finance charge in violation of section 226.4(a)(1); and an overstating of the amount financed in violation of section 226.8(d)(1). Plaintiffs' contentions are without merit.
9. In an interpretative ruling the Federal Reserve Board has ruled that section 226.8(b)(6), requiring disclosure of prepayment penalties, does not apply to precomputed credit transactions, such as the consumer loan transactions between the parties, but only to non-precomputed credit transactions, such as real estate mortgages. The Board further ruled that, although the finance charge rebate on a precomputed obligation as calculated by the Rule of 78's "may be less" than when calculated by the actuarial method, it "does not constitute a penalty charge for prepayment that must be described pursuant to § 226.8(b)(6)." 12 C.F.R. 226.818(b).
10. In the same ruling that Board ruled that, for precomputed credit transactions, simple reference to the Rule of 78's fully satisfies the disclosure requirements of section 226.8(b)(7).
11. The Board's policy decisions regarding use of the Rule of 78's in consumer credit transactions have received judicial approval in Bone v. Hibernia Bank, 493 F.2d 135 (9th Cir. 1974).
12. Although not controlling, an agency's interpretation of its own regulation is entitled to great deference by the Courts. This is especially true for an agency given the broad interpretive and enforcement powers of the Federal Reserve Board under the Truth in Lending Act. Mourning v. Family Publications Service, Inc., 411 U.S. 356 (1973); Bone v. Hibernia Bank, supra.
13. This Court agrees with the Ninth Circuit in Bone that the Board's rulings that the Rule of 78's does not constitute a prepayment penalty, and satisfies the requirements of section 226.8(b)(7), are reasonable and consistent with the Act. Accord, *313 Roberts v. National School of Radio & Television Broadcasting, 374 F.Supp. 1266 (N.D.Ga.1974); Evans v. Household Finance Corp., CCH Consumer Credit Guide ¶ 98,678 (S.D.Iowa, August 27, 1974). See Richardson v. Time Premium Co., [1969-1973 Transfer Binder] CCH Consumer Credit Guide ¶ 99,272 (S.D.Fla.1971); contra, Scott v. Liberty Finance Co., 380 F.Supp. 475 (D.Neb.1974) (decided prior to issuance of Federal Reserve Board interpretive ruling 12 C.F.R. 226.818).
14. Although computation of unearned interest by the Rule of 78's results in a slightly smaller rebate than if the rebate were computed by the actuarial method, the Rule, as noted by the Court in Bone, supra, provides a close approximation to the actuarial method, requires less difficult calculations, and ". . . is widely used by banks and financing institutions as an acceptable substitute for the actuarial method." 493 F.2d at 137. Further, the State of Missouri, along with many states, see 12 C.F.R. 226.818(c), lists the Rule of 78's, along with the actuarial method, as approved methods for recomputing the amount of unearned interest which must be returned by the lender upon prepayment of a consumer credit transaction. Section 408.170, R.S.Mo. (1949).
15. This Court agrees with the Bone Court's analysis and rejection of the argument that use of the Rule of 78's is a prepayment penalty within the meaning of section 226.8(b)(6). Plaintiffs in that case, as in the instant case, contended that use of the Rule is a penalty because it causes a misstatement of the annual percentage rate, and, thus, a violation of section 226.5(b), since it causes the annual percentage rate to vary from the stated rate, depending on the month of payment. The Court found prepayment to be a future contingency within the meaning of section 124 of the Act, 15 U.S.C. § 1634. Section 1634 provides that the Act is not violated if any "act, occurrence, or agreement subsequent to" the required disclosures renders the annual percentage rate inaccurate. Bone, supra, 493 F.2d at 140.
16. For the reasons stated above, the Court also finds that defendant's failure to account, in its statement of the finance charge and the amount financed, for the difference between the rebate as calculated by the Rule of 78's and the actuarial method does not constitute a violation of sections 226.8(j), 226.4(a)(1), or 226.8(d)(1).
17. Defendant has counterclaimed for the balance due on the promissory note executed by the plaintiffs in favor of defendants in connection with the consumer loan transaction of February 28, 1975.
18. There is now due and owing to defendant by plaintiffs the sum of three thousand, forty-nine dollars and ninety-four cents ($3,049.94), pursuant to the terms of the promissory note executed on February 28, 1975, by plaintiffs in favor of defendant.
19. Under Missouri law, prejudgment interest on an ascertainable sum must be awarded at the statutory rate of six percent per annum from the date of demand. Slay Warehousing Co., Inc. v. Reliance Insurance Co., 489 F.2d 214 (8th Cir. 1974). Since there is no evidence of a prior date of demand, prejudgment interest will be awarded at the statutory rate from the date of defendant's counterclaim, July 3, 1975.