Cary Stout DOGGETT, Jr., and Helen Doggett, Appellees,

v.

RITTER FINANCE COMPANY, INC. OF LOUISA, Appellant.

Cary Stout DOGGETT, Jr., and Helen Doggett, Appellants,

v.

RITTER FINANCE COMPANY, INC. OF LOUISA, Appellee.

Nos. 74–2287, 74–2288.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1975.

Decided Dec. 19, 1975.

Scott W. Williams, Charlottesville, Va. (Ronald R. Tweel, Charlottesville, Va., on brief), for appellee in No. 74–2287 and for appellant in No. 74–2288.

Dewey B. Morris, Richmond, Va. (John W. Riely, Richmond, Va., Lindsay G. Dorrier, Jr., Charlottesville, Va., Hunton, Williams, Gay & Gibson, Richmond, Va., Paxson, Smith, Boyd, Gilliam & Gouldman, Charlottesville, Va., on brief), for appellant in No. 74–2287 and for appellee in No. 74–2288.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and CRAVEN, Circuit Judge.

HAYNSWORTH, Chief Judge:

Two borrowers seek damages under the Truth in Lending Act, asserting that the lender's disclosure statement failed to meet the requirements of the Act [1]

and Regulation Z.[2] The district court found the disclosures sufficient in certain respects, but deficient in others and awarded damages. *Doggett v. Ritter Finance Company,* W.D.Va., 384 F.Supp. 50. We affirm insofar as the disclosures were found to be adequate, but reverse insofar as they were found to be inadequate.

The defendant made an unsecured loan to the plaintiffs, husband and wife. At the closing, the finance company provided the plaintiffs with three documents: a disclosure statement, a "loan statement and voucher" and an insurance policy. Both of the borrowers signed the disclosure statement to acknowledge its receipt, and Mr. Doggett signed and dated it in the appropriate place to indicate his election to have credit life and disability insurance.

At the top of the disclosure statement there were a series of boxes showing that twenty-one monthly installments of $35 each were to be paid, a total of $735. The amount financed was shown to be $585.75, the finance charge $149.25, and the annual percentage rate was shown to have been 25.95%. In a box headed "Credit Life Insurance Charge" the figure $10.03 had been inserted, while in another box headed "Disability Insurance Charge" the figures $22.05 had been inserted. In a box headed "Joint Credit Life Insurance Charge" the word "None" had been inserted.

Immediately below the boxes relating to insurance the following paragraph appeared:

CREDIT LIFE AND DISABILITY INSURANCE is not required to obtain this loan. If Borrowers desire credit life insurance, the charge stated above will be included in the Amount Financed and the insurance will cover the Borrower named in the certificate of insurance as stated in the certificate delivered herewith. No charge is made for credit insurance and no credit insurance is provided unless one of

1. 15 U.S.C.A. § 1601 *et seq.*

2. 12 C.F.R. § 226.1 *et seq.*

the Borrowers signs the appropriate statement below.

Immediately below the quoted paragraph were four forms by which the borrower might exercise a choice to procure credit life and disability insurance, credit life insurance only, joint life coverage or no insurance. By signing in the proper place, Mr. Doggett expressed the desire for credit life and disability insurance upon himself.

No where on the disclosure statement is the total cost of the insurance disclosed in one figure. On the insurance policy delivered to the Doggetts, however, it was stated that the cost of the life insurance was $10.03, that the cost of the disability insurance was $22.05, both figures conforming to those on the disclosure statement, and that the total premium was $32.08. Moreover, on the loan statement and voucher, signed by the borrowers, there was a direction to the lender to purchase both life insurance and disability insurance and to deduct the cost from the proceeds of the loan. There was a computation showing a deduction of the $10.03 and the $22.05 premiums from the amount financed of $585.75, resulting in the sum of $553.67, the amount of cash which the Doggetts realized from the transaction.

The controversy arises out of the requirement of the Regulation that charges for insurance written in connection with a credit transaction must be included in the finance charge and its disclosure "unless (i) the insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and (ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving disclosure to him of the cost of such insurance." [3] In this instance, Ritter did not include the insurance premiums in the finance charge, so that it was required to comply with both branches of the Regulation quoted immediately

above. It did not do so, the plaintiffs say, because (1) there was no clear and conspicuous disclosure of the fact that insurance was not required, (2) though the total cost of the insurance, $32.08, was disclosed on the insurance policy and both increments of it were shown as deductions from the amount financed on the loan statement, there was insufficient disclosure of the total premium on the disclosure statement for the two increments of the cost were not totaled, and, (3) though the term of the insurance policy, coinciding with the term of the loan, was disclosed in the policy, it was not disclosed on the disclosure statement. The district judge found against the plaintiffs on their first and third contentions, but agreed with them that there was insufficient disclosure of the cost of insurance because of the separate statement on the disclosure statement of the two increments of its cost without a statement of their total.

■ As to the first contention, the statement in capital letters in a prominent place on the disclosure statement that "CREDIT LIFE AND DISABILITY INSURANCE is not required to obtain this loan" is clear and concise. It was copied verbatim from a sample form published by the Federal Reserve Board.[4] Thereafter, Ritter departed from the form to make reference to credit life insurance, but § 226.6(c) of the Regulation authorizes the creditor to supply additional information, provided it does not "mislead or confuse the customer or contradict, obscure, or detract attention from the information required." Since the additional information does none of these things, we agree with the district court that there was adequate disclosure of the fact that no insurance was required.

■ On the second contention, we, as the district judge, look only to the disclosure statement because of the "in meaningful sequence" requirement of § 226.-

**3.** 12 C.F.R. § 226.4(a)(5).

**4.** *What You Ought to Know About Truth in Lending*, p. 24.

4(a)(5), but we feel that disclosure adequate.

The district court reasoned that the failure to state the cost of both types of insurance in one figure, coupled with the later statement that "if Borrower desires credit life insurance, the charge stated above will be included in the amount financed," could mislead the borrower to think that he might obtain both credit life and disability insurance for the stated cost of credit life alone.

The finance company, however, had no option of disclosure by stating the combined cost of the credit life and disability insurance in one item. Section 266.-8(d)(1) requires individual itemization of all costs, which means that Ritter at least arguably was required to state the cost of credit life and disability insurance separately, as it did. It could also have stated an addition of the cost of the two forms of insurance, but the addition of the two figures was not difficult, particularly since it had been done for the borrowers on the insurance policy.

Nor can we see that the later reference to credit life insurance in the paragraph quoted above could have been confusing. It could only have emphasized the fact that several different types of insurance were available, if desired. This was already emphatic enough in the series of boxes showing the costs of the different types of insurance and in the later spaces in which the borrower could select that type or those types of insurance he wished by signing his name and placing the date, which Doggett did in making his selection of credit life and disability insurance. In selecting the combination, with the clear choice of selecting credit life only, he could not have been misled into believing that he could obtain the combination without paying the total of the two incremental costs, each of which was clearly disclosed to him.

Finally, on this point, the district court thought a separate statement of the cost of disability insurance was confusing surplusage since such insurance was not available except in combination with credit life insurance. As we have already noted, however, Ritter was probably required by the itemization rule to separately disclose the cost of the disability insurance, and it cannot be faulted for doing what the Regulation seemingly required.

 As to the third contention, the term of the insurance coincided with the term of the loan, and the premium cost disclosed and deducted from the loan proceeds was the total cost of the insurance for the full term. Under these circumstances, we think that Ritter was not required to state the term of the insurance on the disclosure statement for the reasons fully stated by the district court. *See Philbeck v. Timmers, Chevrolet, Inc.,* 5 Cir., 499 F.2d 97, rev'g, D.C., 361 F.Supp. 1255.

We thus conclude there was no violation of the Act nor of the Regulation.

*Affirmed in part; reversed in part.*