**Lena Mae ANTHONY,
Plaintiff-Appellant,**

v.

**COMMUNITY LOAN & INVESTMENT CORPORATION d/b/a Blazer Financial Services, Defendant-Appellee.**

No. 75–3023.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1977.

Rehearing and Rehearing En Banc Denied
Nov. 14, 1977.

E. Lundy Baety, Joseph H. King, Jr., Atlanta, Ga., for plaintiff-appellant.

Arthur Gregory, Richard F. Williamson, Atlanta, Ga., Michael C. Lynch, Aristar Management, Inc., Miami, Fla., for defendant-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this Truth-in-Lending action plaintiff-borrower, Ms. Lena Mae Anthony, appeals from the district court's summary judgment in favor of defendant-lender, Community Loan & Investment Corporation of Georgia. We affirm. The disclosure statement Ms. Anthony signed properly described the security interest created, the property covered by the security interest, the charges for credit life and disability insurance, and the rebate method for any unearned finance charges.

In Truth-in-Lending parlance, the present transaction is a "closed-end, nonsale credit transaction." Section 1639 of the Truth-in-Lending Act, 15 U.S.C.A. §§ 1601 *et seq.*, governs what information a lender must disclose to each borrower. Section

1639(a)(8) provides in part that a lender must set forth "[a] description of any security interest held or to be retained or acquired by [them] in connection with the extension of credit . . . ." Acting pursuant to its authority under section 1604, the Federal Reserve Board has adopted regulations pertinent to whether a lender has complied with section 1639(a)(8). *See generally* 12 C.F.R. §§ 226.1 *et seq.* (1976) ("Regulation Z"). Two sections have principal relevance to this case.[1]

Section 226.2(gg) of Regulation Z defines "security interest" to include "any interest in property which secures payment or performance of an obligation" and sets forth a nonexhaustive list of examples which fall within this general definition: "security interests under the Uniform Commercial Code, real property mortgages, . . . and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, . . . [and] any lien on property arising by operation of law. . . ."[2] The security interests recognized by the Federal Reserve Board can be divided into three classes or categories: consensual security interests, confessed security interests, and security interests arising by operation of law. As a means of prescribing more explicitly what section 1639(a)(8) requires, section 226.8(b)(5) provides that each lender must describe or identify

> the type of any security interest held or to be retained or acquired by the creditor

[*i. e.,* the lender] in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. . . . If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

Under this regulation, a lender must make these disclosures as to the security agreement: (1) the type of security interest held, retained, or acquired; (2) the property of the borrower which serves or will serve as the collateral; and (3) whether any future obligations which the borrower may incur to the lender will be secured by any such property.

### I. The Description of Defendant's Security Interest

Contrary to the plaintiff's argument, the description of the security interest contained in the security agreement was sufficient to meet the requirements of 12 C.F.R. § 226.8(b)(5). The security agreement provided that the "Debtor grants a security interest to the Secured Party in the following described personal property: . . . ."[3] and that, in case of default, the secured

---

1. In the third, section 226.202(c), the Federal Reserve Board further clarified its definition of security interest. This regulation provides that, where lawful, confession of judgment clauses or cognovit provisions are security interests under section 226.2(gg) and must be disclosed to the borrower.

2. 12 C.F.R. § 226.2(gg) (1976) provides in full:
 "Security interest" and "security" mean any interest in property which secured payment or performance of any obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens

whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

3. Lender's combination promissory note, security agreement, and disclosure statement provides in part:
 To secure the payment of the above described loan and any future advances to the undersigned, Debtor(s) grant(s) a security interest to the Secured Party in the following described personal property:

party "may exercise any rights and remedies granted a Secured Party by the Uniform Commercial Code." Plaintiff argues that these phrases should be read separately and, so read, do not adequately disclose that the agreement is limited to a consensual security interest as defined in the UCC. We discern no such ambiguity.

The term "security interest" is specifically defined by Georgia law as "an interest in personal property or fixtures which secures payment or performance of an obligation. . . ." Ga.Code Ann. § 109A–1–201(37). The law governing a security interest in personal property is provided by the UCC. Ga.Code Ann. § 109A–9–102(1)(a); *Brown v. Jenkins,* 135 Ga.App. 694, 218 S.E.2d 690 (1975).

One major advantage of the UCC over pre-Code law was that it introduced a single device called a "security interest" to replace the plethora of devices that had previously existed, each with its own terminology and body of law. White and Summers, Uniform Commercial Code § 22–1 at 756 (1972). To *require* a secured party to specify some type of security interest in personal property other than one governed by the UCC serves no meaningful function, except to reintroduce the variety of terms Georgia has sought to encompass within a single term and a single body of law. *See* Ga. Code Ann. § 109A–1–102.

Further, the agreement here specifically refers to the UCC. It is suggested that the provision referring to the UCC remedies of the secured party would be redundant if

only a UCC interest had been created by the words "security interest." Such a reading is improbable, and the explicit reference to rights and remedies under the UCC is clear evidence that a UCC security interest was intended by the parties.

■ The Federal Reserve Board has interpreted a reference to a "security interest under the Uniform Commercial Code" to be a sufficient description of a type of security interest as required by 12 C.F.R. § 226.-8(b)(5). FRB Official Staff Interpretation Letter of Nov. 22, 1976, 1976 CCH CONS. CRED. GUIDE ¶ 31,491. This interpretation is entitled to great weight. *Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971, 976 (5th Cir. 1974). The Code reference fully defines the legal rights of the parties. The agreement here, which mentions both the UCC and the personal property secured, stands in marked contrast to ambiguous language which the FRB letter finds inappropriate, such as "a security interest established by our contract" or "a security interest through our agreement."

The Truth-in-Lending Act was adopted in order to give the consumer as much information as possible about his or her credit transaction. The inclusion of a term such as "chattel mortgage" would be misleading as to the nature of the security, the transaction by its terms being controlled by UCC law, rather than any other state law which might specifically apply to chattel mortgages. The consumer has received all the information necessary about this security interest.

(1) All furniture, appliances and other household goods and chattels located in or about Debtor's residence at the address shown above.
(2) Motor vehicle:
(3) Other (describe):
(4) All accessions to, substitutions for, replacements of and proceeds from the described collateral.
If this Security Agreement includes a motor vehicle, Debtor(s) covenant(s) they will not remove it from the state of their present residence shown above and if this Security Agreement includes other personal property, Debtor(s) covenant(s) they will not remove

such other personal property from their residence, without the written consent of the Secured Party.
If default shall occur in the payment of any debt secured hereby or any conditions of this Security Agreement, then the Secured Party may take possession of the collateral wherever found, with or without legal process, may require the Debtor(s) to assemble the collateral and make it available to the Secured Party at a place reasonably convenient to both parties and may exercise any rights and remedies granted a Secured Party by the Uniform Commercial Code on default by the Debtor(s).

The conclusion that the description of the security agreement in this case satisfies the Act is not contrary to the cases cited by the plaintiff. In *Pennino v. Morris Kirschman & Co.,* 526 F.2d 367 (5th Cir. 1976), this Court held that in an open-ended transaction a disclosure that the creditor was "granted a security interest in the merchandise purchased . . . in accordance with existing state laws" was insufficient to satisfy section 226.7(a)(7), the portion of Regulation Z which applies to open-ended transactions. This transaction, however, was not open-ended, and is not governed by section 226.7(a)(7). *See* 15 U.S.C.A. §§ 1637, 1639. Also, *Pennino* held only that language similar to that in the instant case was insufficient to create a vendor's privilege under Louisiana law, a state which has not adopted the UCC. It did not hold that the security agreement did not describe a "type" of security interest.

Similarly, *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928 (E.D.La.1974), *aff'd without opinion,* 500 F.2d 1182 (5th Cir. 1975), discussed the question of whether the transactions between the parties gave rise to a vendor's privilege under Louisiana law. Once the court determined such an interest had been created, it held that under section 226.8(b)(5), as a statutory lien, it must be disclosed. In contrast, there is no claim in the instant case that more than a UCC security interest was obtained by the creditor. The issue is whether the description of such a security interest was sufficient.

*Pollock v. General Finance Corp.,* 535 F.2d 295 (5th Cir. 1976), *rehearing denied,* 552 F.2d 1142 (5th Cir. 1977), dealt with whether a conditionally worded after-acquired property clause met the requirement of the third portion of section 226.8(b)(5) that security interests in after-acquired property be clearly set forth. It did not discuss the description of a "type" of security interest.

■ Accordingly, we hold that reference to a security interest in personal property and to rights and remedies under the UCC was sufficient to apprise the borrower of the "type of security interest" created by the security agreement in this case.

II. *The Description of the Property of Plaintiff*

The security agreement created a security interest in lender's favor in the following property of borrower:

(1) All furniture, appliances and other household goods and chattels located in or about Debtor's residence . . . .

. . . . .

(4) All accessions to, substitutions for, replacements of and proceeds from the described collateral.

[I]f this Security Agreement includes other personal property, Debtor(s) covenant(s) they will not remove such other personal property from their residence, without the written consent of the Secured Party.

Section 226.8(b)(5) requires the lender to provide the borrower with "a clear identification of the property to which the security interest relates." It is argued that the description provided by the language in this agreement is not clear because it does not list the household goods to which it applies, it does not state that only items belonging to the debtor are included, and it does not provide adequate notice that after-acquired property is included.

■ Requiring a detailed list of items covered would burden creditors and rob credit relationships of flexibility which reduces costs which must be ultimately borne by the debtor. *See Matter of Dickson,* 432 F.Supp. 752, 757 (W.D.N.C.1977). The novel theory that the description *could* encompass property belonging to third parties is hypertechnical and ignores the realities of the security agreement. Fundamental to a secured party's acquisition of a security interest in property of the debtor is that the debtor have "rights in the collateral." Ga. Code Ann. § 109A–9–204(1). A security

interest can be created in no other property. The Truth-in-Lending Act should not be used as a shield to protect the debtor on this kind of argument. *Tinsman v. Moline Beneficial Finance Co.,* 531 F.2d 815 (7th Cir. 1976), stands alone and is contrary to the Federal Reserve Board's position that approves designation of household goods alone, without requiring the security agreement to specify that these are the debtor's household goods and not those of a third party. *See Gibson v. Family Finance Corp.,* 404 F.Supp. 896, 898 (E.D.La.1975) (dictum); *Slatter v. Aetna Financing Co.,* 377 F.Supp. 806, 809–810 (N.D.Ga.1974), *remanded on other grounds sub nom., Jones v. Community Loan and Investment Corp.,* 544 F.2d 1228 (5th Cir. 1976); *Kenney v. Landis Financial Group, Inc.,* 349 F.Supp. 939, 944–945 (N.D.Iowa 1972); FRB Letter of August 26, 1971, [1969–1974 Transfer Binder] CCH CONS.CRED.GUIDE ¶ 30,727.[4] The provision for after-acquired collateral is clear as to what is, or may be, included, and satisfies 12 C.F.R. § 226.8(b)(5), which requires that notice that after-acquired property will be subject to the security interest shall be clearly set forth.

### III. *The Disclosure of Credit Life and Disability Insurance*

■ The security agreement provided: CREDIT LIFE AND DISABILITY INSURANCE is not required to obtain this loan. Such insurance will only be procured for the term of the loan if Customer(s) request(s) Creditor to obtain such insurance by signing below:

I desire Credit Life and Disability Insurance at the cost of $137.39.

| 9/4/73 | /s/ Lena Mae Anthony |
|--------|----------------------|
| Date | Signature |

In *Doggett v. Ritter Finance Co.,* 528 F.2d 860 (4th Cir. 1975), the Fourth Circuit held that a similar provision was "clear and concise" and satisfied the disclosure requirements of Regulation Z. 12 C.F.R. § 226.4(a)(5).

The regulations authorize the exclusion of an insurance premium from the finance charge if the fact that insurance is not required is clearly disclosed to the customer in writing and the customer desiring such insurance coverage signs a specific dated and affirmed written indication of such desire after receiving written disclosure of the cost of the insurance. All of these requirements were met in this case.

■ Although plaintiff asserts that she never requested or desired insurance coverage, but merely signed the documents when told to do so, this assertion is insufficient to vary the terms of the contract or to negate the creditor's full compliance with the disclosure requirements of Regulation Z. The defendant correctly contends that, absent a claim of illiteracy, fraud or duress, no extraneous oral evidence can be presented by the plaintiff to prove that the defendant gave her the impression that the insurance was required. An an FTC informal staff opinion has said:

A written disclosure statement given to the consumer as required by the Truth-In-Lending Act, before consummation of

---

4. As excerpted in CCH CONS.CRED.GUIDE, the letter reads:

 This is in [regards to] the disclosure of a security interest in household goods and other personal property under Regulation Z.

 The intent of § 226.8(b)(5) of Regulation Z is that the customer should be provided a disclosure of the security interest taken as a result of the consumer credit transaction. It is staff's opinion that disclosing to the customer the fact that a security interest will be taken on his household goods and other personal property is adequate to meet the provi-

sions of § 226.8(b)(5) without listing each item. We believe that to require such a listing would be extremely burdensome to creditors. We understand that in many jurisdictions, it is not necessary to have a detailed listing in order to perfect a lien on household goods and other personal property.

 Consequently, we believe that the device of using a box (to be marked only if the borrower's household goods and personal property are not to be collateralized), would be acceptable under Regulation Z.

the transaction, is a protection against oral misrepresentations that induce a loan. Consumers must learn to inspect disclosure statements before signing a contract, otherwise the purpose of the Act and Regulation Z will be frustrated. FTC Informal Staff Opinion of Dec. 9, 1969, [1969–1974 Transfer Binder], CCH CONS. CRED.GUIDE ¶ 30,309. Consumers should not be encouraged to avoid reading or to ignore the information the Act requires to be provided. In addition, the Court can apply the parole evidence rule in this situation to further, not derogate, the purposes of the Act. In this situation therefore Georgia's parole evidence rule is not in conflict with the purposes of the federal statute.

Finally, summary judgment was appropriate on this issue because there was no issue as to any material fact. Anthony's affidavit reads in material part:

> That I never requested or desired any insurance coverage in connection with the loan transaction. That all of the documents I signed were filled out by the loan company and I merely signed the documents when told to do so.

Thus, the affidavit does not place in question whether the defendant "required" purchase of credit life insurance coverage.

IV. *Disclosure of Sum of the Digits Rule*

 Finally, plaintiff challenges the disclosure sufficiency of the method for computing the unearned finance charge rebate in the event of prepayment. The security agreement merely provided the Sum of the Digits Rule would be used. This Court, following the lead of the Ninth Circuit, has recently held in *Grant v. Imperial Motors,* 539 F.2d 506 (5th Cir. 1976), that such disclosure was sufficient. *See also Bone v. Hibernia Bank,* 493 F.2d 135 (9th Cir. 1974). In any event, this point has not been preserved for appeal because the plaintiff failed to object to the Special Master's findings on the issue of the terminolo-

gy for designating the method of computing unearned interest.

The district court's grant of summary judgment is

AFFIRMED.