Glen A. SOUIFE

v.

**FIRST NATIONAL BANK OF COMMERCE, NEW ORLEANS, LOUISIANA.**

Civ. A. No. 77–958.

United States District Court, E. D. Louisiana.

June 7, 1978.

Trevor G. Bryan, New Orleans, La., for plaintiff.

Donald R. Mintz and David S. Willenzik, New Orleans, La., for defendant.

CHARLES SCHWARTZ, District Judge.

This matter is presently before the Court on cross motions for summary judgment previously submitted. A defendant's motion to dismiss had previously been denied in open court. However now the Court and the parties agree that there is no genuine issue as to any material fact. Thus the Court having carefully considered all memoranda, the record and the law, finds as follows:

Plaintiff Glen A. Souife, on February 10, 1976, applied for a direct loan with the defendant, First National Bank of Commerce, for the purpose of financing the purchase of an automobile. Defendant regularly extends credit to consumers in the normal course of its business. Defendant approved plaintiff's application on a pre-authorized basis, allowing plaintiff the opportunity to buy from any dealer any automobile within certain price limitations. Plaintiff subsequently negotiated with Garrard Chevrolet, Inc. ("Garrard") for the purchase of a 1976 Chevrolet "Blaizer" automobile and contacted defendant in connection with the financing thereof. On March 26, 1976, plaintiff executed a loan agreement with defendant at which time a promissory note and chattel mortgage were issued by plaintiff in defendant's favor. Defendant provided plaintiff with copies of such documents as well as disclosure statements required under the Louisiana Motor Vehicle Sales Finance Act (LSA–R.S. 6:951 *et seq.*) and the Federal Truth-in-Lending Act (15 U.S.C. § 1601 *et seq.*) hereafter referred to as "the Act." On Monday, March 28, 1977 plaintiff filed a class action[1] alleging six separate violations under the Act and Regulation Z, 12 C.F.R. § 226.1 *et seq.*[2]

The federal disclosure statement listed, in additive sequence, various charges incident to the subject transaction, including the following:[3]

---

1. Upon defendant's unopposed motion, the class action allegations were stricken from the complaint and the matter has proceeded as an individual action.

2. In his complaint, plaintiff alleged that defendant failed to identify the "creditors" under the transaction. However, insofar as defendant was the sole creditor, and was clearly identified as such on the statement, there is no merit to plaintiff's allegation. Plaintiff apparently concedes this point since he has not opposed defendant's motion for summary judgment in this respect. Accordingly, plaintiff has not carried the burden of proof with respect to this allegation.

3. Through apparent clerical error, $4438.14 was disclosed as the "Amount Financed" instead of $4437.14.

| | |
|---|---|
| (1) Amount of Loan | $ 3,939.06 |
| (2) Other Charges consisting of: | |
| (a) Credit Life Insurance Premium | 157.24 |
| (b) Taxes | 326.34 |
| (c) Recordation Fees | 1.00 |
| (d) License Fees | 5.00 |
| (e) Certificate of Title | 3.50 |
| (f) Dealer Documentation Fee | 5.00 |
| Total Other Charges (a + b + c + d + e + f) | 498.08 |
| (3) Amount Financed (1 + 2) | $4,438.14 |

The finance charge, comprised solely of interest, amounted to $803.10, making the total of payments under the loan to be $5,240.24.

## PRESCRIPTION

■ The transaction was entered into on March 26, 1976; suit was filed on March 28, 1977; March 26, 1977 was a Saturday and March 28, 1977 was a Monday. Defendant contends that plaintiff's claims have prescribed for the reason that more than one year had lapsed prior to the filing of the cause of action. The majority rule is that Rule 6, Federal Rules of Civil Procedure, is applicable to federal statutes of limitation. Wright & Miller, 4 Federal Practice & Procedure § 1163. The subject statute, 15 U.S.C. § 1640(e), does not evidence a contrary policy, especially in light of the fact that the Truth in Lending laws were enacted after the effective date of Rule 6. See *Union National Bank v. Lamb*, 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190. The Court concludes that Rule 6(a) which provides that when the final day of a period of time falls on a Saturday the litigant is allowed to file his papers on the following Monday, is applicable to the statutory time period delineated in 15 U.S.C. § 1640(e), and, that the lawsuit was timely filed. *Gammons v. Do-*

*mestic Loans of Winston-Salem, Inc.*, 423 F.Supp. 819 (M.D.N.C.1976); *Smith v. Safety Finance Co.*, C.A. # 77–1141 (Section "B", E.D.La.1977); Wright & Miller, *supra* at § 1162, esp. n. 22.

## SECURITY INTEREST

The disclosure statement shows under Section "D" that the loan was secured by a chattel mortgage on plaintiff's automobile. Section "E" provides in part that the customer is required to maintain property insurance and may choose the person through which such insurance is to be obtained. Moreover, the customer under said section ". . . is required to furnish the Bank with a copy of such an insurance policy containing a long form loss payable clause in favor of the Bank." The chattel mortgage was provided on a separate form, the back of which reiterated the property insurance requirement, and further assigned proceeds and unearned premiums of such insurance to defendant to be applied against any unpaid indebtedness or toward the purchase of similar insurance under various contingent circumstances such as default, plaintiff's inability to purchase insurance, or cancellation of the insurance. Plaintiff contends that such provision displays two types of security interest not disclosed on the statement: An assignment of rights to the insurance proceeds and any unearned premiums. Defendant is given an unequivocal power of attorney to receive and apply any insurance proceeds or unearned premiums to the unpaid balance of the loan. Failure to disclose such security interests, according to plaintiff, violates 15 U.S.C. § 1639(a)(8) and 12 C.F.R. § 226.8(b)(5).

■ Although the defendant raises various theories[4] in support of its contention

4. For example, defendant relies upon Federal Reserve Board Staff Opinion No. 1263, November 23, 1977, which views the subject issue as one involving an interpretation of state law. Hence, defendant argues *inter alia* that under Louisiana law, only a contingent contractual right was assigned; that in substance the clause in question is only a mortgagee loss payable clause which only created an "equitable lien" but not a property interest; that de-

fendant is only the "conditional appointee" acting on behalf of plaintiff in accordance with LSA–R.S. 6:958(B); and that such assignment was not a mortgage, pledge, privilege or other security interest under Louisiana law. Furthermore, defendant contends inasmuch as the assignment can only be exercised in the event of a loss or early cancellation of the insurance, such rights constitute "subsequent occurrences" within the meaning of 12 C.F.R. § 226.6(g).

that such assignment of rights did not give defendant a "security interest" within the context of the statute and regulation cited above, for the purpose of this decision it is not necessary to make such a determination. Even assuming *arguendo* that the assignment of proceeds and unearned premiums was a security interest, it was adequately disclosed.

"[6] Regulation Z elaborates the statutorily required 'description of any security interest,' 15 U.S.C. § 1639(a)(8), as '*description or identification of the type* of any security interest.' 12 C.F.R. § 226.-8(b)(5). (emphasis added). Decisions in this circuit generally accept that simply the identification of the type of security interest is sufficient disclosure."

*Elzea v. National Bank of Georgia*, 570 F.2d 1248 (5th Cir. 1978).

12 C.F.R. § 226.8(b)(5) requires that the creditor disclose:

"A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained, or acquired."

The disclosure statement clearly disclosed the type of security interest as a "Louisiana Chattel Mortgage" which accompanied the statement. The second sentence under the "SECURITY INTEREST" section of the disclosure statement provided that:

"This loan is further secured by the pledge of any and all money or securities or other property whatsoever on deposit with, or in possession of, or under the control of Bank as collateral or otherwise, or in transit to and from Bank for any purpose, belonging to or to the credit of or for the account of customers."

Immediately thereunder reference is made to the requirement of property insurance and a long form loss payable clause in favor of the Bank:

"E. INSURANCE: (1) *Property Insurance*: Customer is required to maintain insurance on the commodity described above for the term of this loan. Customer may choose the person through which such insurance is to be obtained. Customer is required to furnish Bank with a copy of such an insurance policy containing a long form loss payable clause in favor of the Bank."

The disclosure statement has thus clearly identified the existence of the chattel mortgage, the mandatory property insurance with a loss payable clause, and the optional credit life insurance. The fact that defendant did not choose to incorporate the insurance provisions under the section entitled "SECURITY INTEREST" is inconsequential since it was undoubtedly, more effectively called to the attention of the consumer under the bold heading of "INSURANCE." Defendant should not be penalized for what is apparently a more meaningful disclosure of such terms.

The "long form loss payable clause" referred to on the face of the disclosure statement was set forth in the chattel mortgage in its entirety as follows:

"The commodity shall be at Customer's risk and Customer shall procure and maintain for the term hereof insurance

against all risks of damage to the commodity, at Customer's expense, in such form and for such amounts as holder may require, the proceeds thereof to be payable as interest shall appear. Customer hereby assigns to hold any moneys not in excess of the unpaid balance hereunder which may become payable under such and any other insurance, whether relating to persons or property, including return or (sic) unearned premiums, and directs any insurance company to make payment direct to holder to be applied to said unpaid balance and appoints holder as attorney-in-fact to endorse any draft. To the extent permitted by applicable law, if for any reason insurance against risks of damage to the commodity to be financed hereunder cannot be purchased or, if purchased, is thereafter cancelled, or the premium adjusted, holder shall have the option, though not the duty; to apply the amount financed for purchase of such insurance, or any refund of the premium received by holder, toward payment for similar insurance protecting the interest of the Customer and the holder or either of them. In the event of any default under this mortgage, holder is authorized to cancel all said insurance and credit any premium refund received against said unpaid balance."

Such lengthy identification, in the Court's opinion, could not properly have been made on the disclosure statement. Instead, the defendant rightfully detailed such identification on the instrument evidencing the obligation in compliance with § 226.8(b)(5); See, *Gibson v. Family Finance Corporation of Gentilly, Inc.*, 404 F.Supp. 896 (E.D.La. 1975).[5]

OTHER CHARGES

Plaintiff contends that the taxes, recordation fees, license fees, certificate of title fee, and dealer documentation fee should have been included in the "Amount of Loan" segment and not in the "Other Charges" section as contended by the defendant. Plaintiff seemingly bases his argument on the observation that said other charges were not bank expenses and/or fees incident to the extension of the loan by the bank to plaintiff, and thus must be part of the amount of credit which plaintiff received.

Generally, certain items, including official fees, insurance premiums, taxes, license, title and registration fees are to be included in the Finance Charge but may be excluded from it, provided they are properly itemized and disclosed to the customer. 15 U.S.C. § 1605(d); 12 C.F.R. § 226.4(b). The items listed by defendant were assessed by the defendant, and, specifically itemized and disclosed in accordance with the regulations: *Credit Life Insurance Premium*, 15 U.S.C. § 1605(c) and 12 C.F.R. § 226.4(a)(5). Also see *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir. 1974); *Taxes*, 15 U.S.C. § 1605(d)(3) and 12 C.F.R. § 226.4(b)(3); *Recordation Fees*, 15 U.S.C. § 1605(d)(1) and 12 C.F.R. § 226.4(b)(1); *License and Certificate of Title Fees*, 15 U.S.C. § 1605(d)(4) and 12 C.F.R. § 226.4(b)(4); and, *Dealer Documentation Fee*, 15 U.S.C. § 1639(a)(2); 12 C.F.R. § 226.8(d)(1); Cf. *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511, 519 esp. n. 18 (5th Cir. 1976) citing Federal Reserve Board Letters, 5 CCH, CCG ¶ 30,872 and ¶ 30,935.

Insofar as the subject transaction was a nonsale loan extension of credit, and the noted items were properly excludable from the finance charge, 15 U.S.C. § 1605(d), 12 C.F.R. § 226.4(b) and § 226.8(d)(1), defendant correctly disclosed the "Amount Financed" (i. e. the amount of credit) as consisting of the "Amount of Loan" (i. e. loan proceeds) plus individually itemized "Other Charges." 15 U.S.C. § 1639(a); Cf. *Young v. Ouachita National*

---

**5.** Even if the Court was to characterize the clause in question as containing a "pledge" or other security interest, as plaintiff suggests, the second sentence of the "SECURITY INTEREST" section, quoted above, specifically discloses the security of pledge. Thus, the type of security was adequately identified. See, *Elzea v. National National Bank of Georgia, supra*, and cases cited therein; Also see Federal Reserve Board Letter of July 15, 1976 at 5 CCH, CCG ¶ 31,424.

*Bank of Monroe*, 428 F.Supp. 1323 (W.D.La. 1977); Federal Reserve Board Staff Interpretation, September 13, 1977, 5 CCH, CCG ¶ 31,692, Federal Reserve Board Letters at 5 CCH, CCG, ¶ 31,555; ¶ 31,321; and ¶ 31,-306.

The Act and the regulations do not distinguish between the consumer loan transaction and the consumer credit sales transaction insofar as concerns the requirement that charges which are excludable from the finance charge must be disclosed and individually itemized. Compare, 15 U.S.C. § 1639(a)(2) and 12 C.F.R. § 226.8(d)(1), regarding consumer loan transactions *with* 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.-8(c)(4) regarding consumer credit sales transactions.[6]

## CLEAR, CONSPICUOUS AND MEANINGFUL SEQUENCE

■ Having reached the conclusion that defendant properly itemized the various charges discussed above, plaintiff's contention, that such listing of the charges was confusing and misleading in violation of 12 C.F.R. § 226.6(a) and (c), is also without merit. Although there is no specific requirement under the Act or Regulation Z as to the appropriate method or sequence to be employed, the defendant has followed the more rigid approach suggested by the Seventh Circuit in *Allen v. Beneficial Finance Co.*, 531 F.2d 797 (7th Cir. 1976) by utilizing the additive form. Hence, the Court finds that the subject statement discloses in a clear and meaningful sequence.

## CREDIT LIFE INSURANCE

Plaintiff also claims that defendant failed to include the Credit Life Insurance premium in the Finance Charge in violation of 12 C.F.R. § 226.4(a)(5)(i). In particular, plaintiff contends that defendant failed to con-

spicuously disclose that insurance coverage is not required by the creditor. However, subsection "E" of defendant's disclosure statement clearly states, in print identical in size to that of the balance of the statement, the following:

"(2) <u>Credit Life Insurance</u>: Credit Life Insurance is not required in order to obtain this loan. Customer may purchase such insurance coverage through Bank on a voluntary basis. No charge will be made and no insurance will be issued unless customer dates and signs the appropriate statement(s) below:

Cost of Credit Life Insurance for the term of loan $_____

___ I desire Credit Life Insurance.

___ I do not desire Credit Life Insurance.

I acknowledge by my signature below that the above insurance election statement was read before signing.

_____  _____"

Name            Date

■ The Court specifically concludes that the defendant has conspicuously disclosed that the credit life insurance was not required in order to obtain the loan. Thus, the nonmandatory credit life insurance premium is not a "finance charge" within the meaning of § 226.4 of Regulation Z. See, *Rivera v. Dick McFeely Pontiac, Inc.*, 431 F.Supp. 506, 508 (D.C.Ill.1977); *Ecenrode v. Household Fin. Corp. of South Dover*, 422 F.Supp. 1327, 1335 (D.Delaware, 1976).

## PLAINTIFF'S SIGNED COPY

■ Finally, plaintiff contends that although he received a copy of the disclosure statement, such *copy* did not contain his signature as to the affirmation of the election of insurance coverage or on the copy of the statement itself, in violation of 12 C.F.R. § 226.4(a)(5)(ii) and § 226.8(a). Even assuming that plaintiff received only an unsigned copy in these respects, there is no requirement under the cited regulations that the consumer receive a *signed* copy. The requirement of the consumer's written election to obtain the optional credit insur-

**6.** Even if the Court assumed *arguendo* that such other charges should have been included in the "Amount of Loan" disclosed to plaintiff, defendant then would not have been required to individually itemize and identify such component parts. See *McGowan v. Credit Center of North Jackson, Inc.*, 546 F.2d 73 (5th Cir. 1977); Cf. Federal Reserve Board Official Staff Interpretation, 5 CCH, CCG ¶ 31,692. In such event, it could have been argued that defendant failed to individually itemize incidental charges which were not includable in the finance charge. Instead, defendant has properly itemized said charges in furtherance of the stated purpose of the Act. 15 U.S.C. § 1601.

ance from the lender is not a "lender disclosure" within the meaning of 12 C.F.R. § 226.8(a). See *Burton v. G. A. C. Finance Co.*, 525 F.2d 961 (5th Cir. 1976); *Gillard v. Aetna Finance Co., Inc.*, 414 F.Supp. 737 (E.D.La.1976).

For the foregoing reasons, the motion for summary judgment filed on behalf of plaintiff, Glen A. Souife is hereby DENIED, and the motion for summary judgment filed on behalf of defendant, First National Bank of Commerce, New Orleans, Louisiana is hereby GRANTED, dismissing plaintiff's suit in its entirety at plaintiff's costs.

Let judgment be entered accordingly.