**Bickett Douglas FORT, Plaintiff,**

v.

**FIRST CITIZENS BANK & TRUST COMPANY, and Darrell Wiseman Imports, Inc. d/b/a Wiseman Imports, Defendants.**

No. C–77–316–WS.

United States District Court, M. D. North Carolina, Winston-Salem Division.

March 17, 1981.

Herman L. Stephens of Badgett, Callaway, Phillips, Davis, Stephens, Peed & Brown, Winston-Salem, N.C., for plaintiff.

Michael P. Flanagan and Rodney A. Currin of Ward & Smith, Newburn, N.C., for defendant First Citizens Bank & Trust Co.

·Thomas W. Moore, Jr., of Hutchins, Tyndall, Doughton & Moore, Winston-Salem, N.C., for defendant Darrell Wiseman Imports.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HIRAM H. WARD, District Judge.

This is an action to recover for alleged violations of the Truth in Lending Act (the Act), 15 U.S.C. § 1601 *et seq.,* and Regulation Z, 12 C.F.R. § 226.1 *et seq.,* promulgated thereunder. Plaintiff Bickett Douglas Fort claims that.defendants violated the Act in three respects on the disclosure statement provided him by (1) failing either to include the cost of credit life insurance in the finance charge or to clearly and conspicuously disclose that they did not require such insurance, 15 U.S.C. § 1605(b); 12 C.F.R. § 226.4(a)(5); (2) failing to properly identify their security interests, 15 U.S.C. § 1638(a)(10); 12 C.F.R. § 226.8(b)(5); and (3) failing to make required disclosures legibly, 12 C.F.R. § 226.6(a). Once the Clerk calendared this matter for trial, the parties agreed to submit it to the Court for decision upon stipulated facts and oral argument.[1] The parties filed their stipulated facts and briefs,[2] and the Court heard their arguments on March 5, 1981. It now enters its findings of fact and conclusions of law thereon. Fed.R.Civ.P. 52.

## FINDINGS OF FACT

1. Plaintiff Fort is a natural person. Defendant Darrell Wiseman Imports, Inc.

---

1. At the subsequent hearing, all parties agreed that oral argument upon the facts stipulated should substitute for a trial of this matter. They also indicated that the Court could find other disputed facts, if any remained, based on all matters contained in the file.

2. Instead of filing a brief on stipulated facts as originally agreed, plaintiff filed a summary judgment motion, Fed.R.Civ.P. 56, and supporting brief. Nevertheless, the Court will treat that brief as if properly denominated and will decide the case according to the parties' agreement revealed in note 1, *supra.*

(Wiseman) was a North Carolina corporation which conducted business in Winston-Salem, North Carolina as Wiseman Imports. Defendant First Citizens Bank & Trust Co. (First Citizens), a North Carolina corporation, in the ordinary course of its business, regularly extends, offers to extend, arranges or offers to arrange for the extension of credit for which a finance charge is or may be imposed. The property or services subject to such credit transactions are intended primarily for personal, family, household or agricultural use. Stipulation of Facts ¶¶ 4–7 (October 20, 1980). Therefore, First Citizens is a creditor within the meaning of the Act. 15 U.S.C. § 1602(f); 12 C.F.R. §§ 226.2(p) & (s). Although the parties have not stipulated so, that Wiseman was a creditor, which arranged extensions of credit, is implicit in their stipulations and arguments. Thus, both defendants are subject to the requirements of the Act.

2. On June 29, 1976, Fort entered into a consumer credit sale with Wiseman to purchase a 1974 Chevrolet and incurred a finance charge in excess of $1,000. Wiseman acquired a security interest in the automobile. Fort executed a purchase money security agreement. Wiseman provided Fort a copy of that agreement as his Truth-in-Lending disclosure statement, Motion for Summary Judgment and Brief Exhibit A (August 26, 1980). Stipulation ¶ 8.

3. Wiseman immediately assigned its agreement and security interest to First Citizens pursuant to a course of dealing whereby Wiseman sold automobiles and arranged financing with First Citizens. First Citizens provided Wiseman with all contract forms which Wiseman ultimately assigned to First Citizens. Those preprinted forms designated First Citizens as assignee and subsequent creditor. First Citizens determined the general terms of all such credit sales, and Wiseman prepared the agreements substantially in accord with First Citizens' instructions. First Citizens gave final approval of such extensions of credit.

Wiseman informed its customers that First Citizens was the true creditor. No employee or representative of First Citizens was present when Wiseman and Fort consummated their transaction. Stipulation ¶¶ 9–12.

4. Around April 1, 1977, First Citizens repossessed Fort's automobile. The day after repossession, Fort offered to make all payments in default plus two or more future payments in advance upon return of the automobile, but First Citizens refused his offer. Stipulation ¶¶ 14–15.

5. The credit life insurance terms contained in First Citizens' form security agreement clearly and conspicuously disclosed that defendants did not require Fort to purchase such insurance. *See* discussion pp. 4–9, *infra.*

6. The Court has examined Fort's copy of the disclosure statement. Although at this time some of the numerical figures contained in defendants' disclosures, 15 U.S.C. §§ 1605(b) & 1638(a); 12 C.F.R. §§ 226.8(b) & (c) & 226.4(a)(5), are arguably illegible, Fort has not proven by a preponderance of the evidence that they were illegible when Wiseman provided him with a copy. Therefore, the Court concludes that they were legible immediately before the transaction was consummated, 15 U.S.C. § 1638(b); 12 C.F.R. § 226.8(a). This lawsuit was filed on June 29, 1977, one year after Fort and Wiseman entered into their transaction. The Court does not know when Fort gave his attorney his copy of the statement. Obviously, he did not do so until First Citizens repossessed his automobile—the event which precipitated this lawsuit—around April 1, 1977. Thus, Fort had possession of his copy for nearly one year.[3] His copy is significantly shopworn. A large vertical fold passes through several of the required disclosures. The Court fears that much of the carbon ink has worn off since the document was executed. In fact, a touch of a finger will further smudge the numerals. It has been folded in several other places so that its various sections

---

**3.** Fort's attorney stated that he had maintained Fort's copy as best possible in the attorney's

files for the approximately three years preceding its filing with the Court.

would rub together. The copy of the disclosure statement provided First Citizens, on the other hand, contains clearly legible figures.[4] Trial Brief of defendant First Citizens, Exhibit 6 (August 25, 1980). It is in significantly better condition than Fort's copy. It too has been folded, but only neatly. Fort did not request a more legible copy when he bought his automobile.[5]

## DISCUSSION

### Credit Life Insurance Disclosure

In connection with a consumer credit sale not under an open end credit plan, a creditor must disclose the amount of the finance charge involved. 15 U.S.C. § 1638(a)(6); 12 C.F.R. § 226.8(b)(2) & (c)(8)(i). The finance charge shall include charges or premiums for credit life insurance written in connection with the sale unless (1) the creditor does not require such insurance and clearly and conspicuously discloses that fact in writing; and (2) the customer gives specifically dated and separately signed affirmative written indication of a desire for such insurance after having received written disclosure of its cost. 15 U.S.C. § 1605(b); 12 C.F.R. § 226.4(a)(5).

Fort claims defendants here did not clearly and conspicuously disclose that they did not require credit life insurance. Defendants' disclosure statement contains a large rectangular block on the right front side entitled "INSURANCE DISCLOSURES." Besides being in capital letters, that title is in type nearly the same size and the same boldness as the disclosures required by 12 C.F.R. § 226.6(b) & (c), except for those required to be more conspicuous, 12 C.F.R. § 226.6(a). The top half of the block includes provisions unused in this transaction governing physical damage insurance. The term "PHYSICAL DAMAGE INSURANCE" is in bold face capitals but not as large as the "INSURANCE DISCLOSURES" title. In the middle of the block, one line states "LIABILITY AND BODILY INJURY INSURANCE NOT INCLUDED" in letters only surpassed in boldness and size by the required more conspicuous "FINANCE CHARGE" and "ANNUAL PERCENTAGE RATE" terms, 12 C.F.R. § 226.6(a), and in size by the additional terms "Payment Schedule" and "Balloon Payment," 12 C.F.R. § 226.6(c), and the identifying information at the top of the disclosure form. The lower half of this insurance block contains the credit life provisions. The term "Group Credit Life . . . Insurance" is not in capitals or in boldface type. Those provisions provide as follows:

I request that Group Credit Life and/or Accident and Health Insurance be purchased through Bank. I understand that such insurance is not required by Bank for this credit extension and that such purchase is voluntary on my part.

Any Credit Life and/or Accident and Health Insurance obtained in connection with this application will be subject to the terms and conditions of the policy issued therewith. The total premium cost appears below for the insurance purchased covering the term of the original credit: (*See* Footnote 1 Below)

| | |
|---|---|
| Credit Life Insurance Premium – Single Life | $_____ |
| Joint Life | $_____ |
| Credit Life and Accident and Health | $_____ |
| Total Insurance Premium | $_____ |

Neither I nor any proposed Joint Insured Debtor has attained age 65 on this date and I/we are now in good health and free from physical disorder and do hereby authorize every physician and/or hospital to disclose all of my medical history prior to the date of this credit extension.

(If any premium is not quoted above, then insurance is not requested for that coverage.)

| | |
|---|---|
| _____ | _____ |
| Date of Birth | Debtor (Person to be Insured with Credit Life and/or Accident & Health) |

Wiseman filled in the cost of a single life credit life insurance premium for Fort [6] and dated this statement. Fort signed it indi-

---

**4.** The order in which each carbon copy was located beneath the original upon execution could have had some significance. If Fort's copy was on the bottom and, therefore, most likely the least legible copy, then Fort had the burden of placing that evidence before the Court.

**5.** The Court in no way means to suggest that a debtor *waives illegibility or any other violation* by not requesting a correction of his disclosure statement copy when the statement is executed. However, in this case, Fort's failure to express dissatisfaction is some evidence of the document's condition at its execution.

**6.** Fort alleges that the quoted insurance premium is illegible. Fort's illegibility claim is discussed at pp. 11–12, *infra.*

cating his desire to purchase credit life insurance.[7]

Official Staff Interpretation No. FC–0084 (June 20, 1977) discusses the terms "clearly" and "conspicuously." [8] Basically, it states that the meaning of "clearly" and "conspicuously" "must be determined by reference to the particular set of disclosures under consideration." Although that interpretation involves consumer leasing disclosures, its reasoning is equally applicable here and is not "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22, 31 (1980).

The terms "clear" and "conspicuous" are used in the context of various consumer credit disclosures. In setting forth the general requirements for required Truth-in-Lending disclosures, 15 U.S.C. § 1631(a) provides that each creditor shall make those disclosures "clearly and conspicuously." The corresponding regulation carries forward that requirement. 12 C.F.R. § 226.-6(a). The statute allowing exclusion of credit life insurance premiums from the finance charge, 15 U.S.C. § 1605(b), is not governed by that general requirement.[9] It does not mention conspicuously disclosing that the creditor requires no insurance but, rather, speaks of clearly disclosing that fact. Instead, the relevant regulation adds the conspicuousness requirement. 12 C.F.R. § 226.4(a)(5)(i). The difference between the 15 U.S.C. § 1638(a) required disclosures and the, to some extent, optional 15 U.S.C. § 1605(b) insurance disclosures,[10] along with

their corresponding regulations, suggest the term "conspicuous" does not apply to them equally. Similarly, 15 U.S.C. § 1635(a) requires that a creditor "clearly and conspicuously" disclose a customer's right of recision in certain transactions. The implementing regulation for that section, however, is very specific about the method of making the required disclosure even to the point of specifying a minimum type size and boldface type. 12 C.F.R. § 226.9(b). Comparing these various provisions demonstrates that the degree of " 'conspicuousness' required relates to the importance or weight assigned to a particular disclosure." *Reed v. Washington Trailer Sales, Inc.*, 393 F.Supp. 886, 892 (M.D.Tenn.1974). No uniform standard exists by which to judge the concept of conspicuousness.[11]

A relative application of the term "conspicuous" is consistent with the purpose of the first subchapter of the Act "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601(a). With that purpose in mind, a fact finder can analyze the particular disclosure under consideration and its weight and importance to see if it is sufficiently conspicuous.

Fort contends that the Court should rely on the Uniform Commercial Code (UCC) definition of "conspicuous," N.C.Gen.Stat.

---

**7.** Fort has not alleged that he actually did not desire credit life insurance. The only evidence on this point is the uncontroverted written indication on the disclosure statement that he did.

**8.** Fort's counsel correctly agreed at the hearing, that all other requirements for the exclusion of credit life premiums from the finance charge were satisfied in this case. Defendants clearly informed Fort in writing that the insurance was not required; Fort received a written cost disclosure, *but see* note 6, *supra* ; and he signed a separately dated request for coverage. *Anthony v. Community Loan & Investment Corp.*, 559 F.2d 1363, 1369 (5th Cir. 1977); *Burroughs v. Local Acceptance Co.*, (*In re Dickson* ), 432 F.Supp. 752, 759 (W.D.N.C.1977). Further, Fort has not alleged that Wiseman gave him the impression that it or First Citizens required

insurance. The unrebutted written assertion that insurance was not required is the only evidence on this point. *In re Dickson, supra* at 759; *see Anthony v. Community Loan, supra* at 1369.

**9.** Recall that a creditor is not required to make the credit life insurance disclosures. He may, instead, include charges for that insurance in the finance charge or not write insurance in connection with his credit transactions. 15 U.S.C. § 1605(b); 12 C.F.R. § 226.4(a)(5).

**10.** See note 9, *supra*.

**11.** Myriad other examples of the Act's relative use of the term "conspicuous" exist. See, *e. g.*, 15 U.S.C. § 1663.

§ 25–1–201(10).[12] That definition obviously is not binding upon a court interpreting the Act. Fort cites *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980), as a case which has recently adopted the UCC definition. But that case applied the UCC definition as adopted by Texas to interpret a similar provision of the Texas Consumer Credit Code rather than the Act. 614 F.2d at 977–78. Most likely, Fort would have the Court adopt the UCC's concept that language in a preprinted form is "conspicuous if it is larger or in other contrasting type or color." Yet, this concept is akin to Regulation Z's concept of "more conspicuously." 12 C.F.R. § 226.6(a). No provision requires that all Truth-in-Lending or Regulation Z disclosures be more conspicuous than other items on a disclosure statement. A creditor may include additional information along with required disclosures so long as the additional information is not "stated, utilized, or placed so as to mislead or confuse the customer ... or contradict, obscure or detract attention from the [required] information." 12 C.F.R. § 226.6(c); 15 U.S.C. § 1632(b). However, the UCC concept that a conspicuous term is one which a reasonable person ought to notice, is instructive because such a term would serve the purpose of meaningful disclosure. The Court will use that rationale in analyzing defendants' disclosure form.

█ Whether disclosures are clear and conspicuous is a question of fact. *Peritz v. Liberty Loan Corp.*, 4 Cons.Cred. Guide (CCH) ¶ 98,969 (N.D.Ill. March 5, 1973); see *Andrucci v. Gimbel Brothers, Inc.*, 365 F.Supp. 1240, 1243–44 (W.D.Pa.1973), *aff'd*, 505 F.2d 729 (3d Cir. 1974); *cf. Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 221 (4th Cir. 1978) (question of meaningful sequence and misleading or confusing additional information). Here, the Court has decided that fact question in favor of defendants. Finding of Fact No. 5. Furthermore, the Court is so certain of that fact that it believes no reasonable mind would disagree. Defendants, therefore, are actually entitled to judgment on this point as a matter of law. *Barber v. Kimbrell's*, 577 F.2d at 221.

█ Although defendants could have further emphasized words such as "credit life," *Doggett v. Ritter Finance Co.*, 528 F.2d 860, 862 (4th Cir. 1975), or "not required," defendants' disclosure was not inconspicuous. Defendants disclosed that insurance was not required inside a block entitled "INSURANCE DISCLOSURES" prominently placed on the statement in type smaller than the 12 C.F.R. § 226.8(b) & (c) required disclosures but larger and with more space between the letters than a substantial amount of finer print elsewhere on the page. Thus, defendants made the disclosure in a meaningful manner so that a reasonable person would notice it. *Doggett v. Ritter*, 528 F.2d at 862; *Greeson v. Lexington State Bank*, 497 F.Supp. 301 (M.D.N.C.1980) (Gordon, C.J.); *Souiffe v. First National Bank*, 452 F.Supp. 818, 823 (E.D.La. 1978); *see Reed v. Washington*, 393 F.Supp. at 890–92.

The disclosure statement states only that the "Bank" does not require credit life insurance. Fort, consequently, argues that a violation occurred because it did not also state that the "Dealer" does not require such insurance. This argument is without merit. Wiseman made all of its customers aware that First Citizens was the true creditor. Stipulation ¶ 11(f). Those customers should clearly understand that such insurance was not required by anyone in connection with Wiseman's sales.

*Personal Property In Repossessed Vehicle*

█ As creditors, defendants were required to disclose, on the same side of the disclosure statement as other required disclosures,

---

12. The Uniform Commercial Code definition provides as follows:

"Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous." N.C.Gen.Stat. § 25–1–201(10).

A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify.

12 C.F.R. § 226.8(b)(5); 15 U.S.C. § 1638(a)(10). The reverse of First Citizens' disclosure statement under the heading "REMEDIES ON DEFAULT (including Powers of Sale)" contains the following provision:

Upon any of the foregoing events, circumstances, or conditions of Default, and at any time thereafter, the Secured Party, at its option may declare all of the obligations secured hereby to be immediately due and payable and shall have all the remedies of a Secured Party under the Uniform Commercial Code, as enacted in North Carolina, whether or not such Code is in effect at time of default.

Without limitation thereto, Secured Party shall have the following specific rights:

(1) To take immediate possession of the Collateral without notice or resort to legal process; and for such purpose, to enter upon any premises on which the Collateral or any part thereof may be situated and remove the same therefrom. *Secured Party may temporarily hold, for the Debtor, any personal property located in said vehicle and not subject to Secured Party's security interest. In such event, Debtor shall, by certified or registered U.S. Mail, notify Secured Party within twenty-four hours after its resumption of possession or repossession of the Collateral, as to any such articles claimed by Debtor not to be subject to Secured Party's security interests. Absent such noti-*

*fication, Secured Party may dispose of any such personalty as if it were expressly covered by its security interests created in this Agreement.*

(emphasis added). Fort contends that the terms concerning disposal of personal property found inside repossessed vehicles constitute a security interest which defendants failed to disclose on the front of the disclosure statement.

Regulation Z defines security interest to mean "any interest in property which secures payment or performance of an obligation." 12 C.F.R. § 226.2(gg). The Court concludes as a matter of law that the terms involved here governing the handling of personal property located in repossessed vehicles do not constitute a security interest which the creditor must disclose. *Ratliff v. McInerney Ford, Inc.*, 5 Cons.Cred.Guide (CCH) ¶ 97,426 (M.D.Fla. May 12, 1980); *Jacobson v. American National Bank & Trust Co.*, 5 Cons.Cred.Guide (CCH) ¶ 98,355 (N.D. Ill. May 19, 1976). The provision in question demonstrates that First Citizens included it to protect itself from possible liability for conversion and to prevent it from the onerous burden of storing its debtors' personal property not covered by its express security interest. The provision specifically refers to property "*not subject* to Secured Party's security interest" and disposing "of any such personalty *as if it were expressly covered* by its security interests" (emphasis added). This language negates any intent by First Citizens to take an interest in such property to secure payment. The provision does not state that the creditor may sell the property and apply the proceeds to the underlying debt.[13]

*Legibility*

■ The Act and Regulation Z required defendants to disclose, in accordance with 12 C.F.R. § 226.6, numerous other items all on one side of the disclosure statement. 15 U.S.C. § 1638(a); 12 C.F.R. § 226.8(b) & (c).

---

13. The parties correctly agreed at the hearing that whether any personalty was located in Fort's repossessed vehicle is irrelevant to the presence or absence of a Truth-in-Lending violation. The disagreement between Fort and First Citizens over some of Fort's property merely serves to emphasize that they should litigate questions concerning personalty located in the vehicle in state court.

Section 226.6(a) provides that "all numerical amounts and percentages shall be stated in figures and ... shall be legibly handwritten." Fort contends that several of the numerical entries on his copy of the disclosure statement are illegible. The Court has found, however, that Fort has not carried his burden of proof on this issue and, therefore, that Fort's copy was legible when Wiseman gave it to him. Finding of Fact No. 6.

*Liability In Multiple Creditor Transactions*

 Whenever multiple creditors are involved in a credit sale, the seller, who arranges credit, has the duty of making all the disclosures required, in this instance, by 12 C.F.R. § 226.8(b) & (c). The lender, who extends credit, has the duty of making only those disclosures which are within its knowledge and the purview of its relationship with the customer. 12 C.F.R. § 226.-6(d); *Jennings v. Edwards*, 454 F.Supp. 770, 773–76 (M.D.N.C.1978), *aff'd*, 598 F.2d 614 (4th Cir. 1979) (table case). In this case, no employee or representative of First Citizens was present when Fort and Wiseman consummated their transaction. Stipulation ¶ 12. The copy of the disclosure statement which First Citizens received contained clearly legible handwritten figures. Finding of Fact no. 6. Thus, the Bank had no knowledge of any possible illegibility; since it did not participate in executing the credit sale documents, the filling in of blanks legibly was not within the purview of its relationship with Fort. Even if the Court had held for Fort on all three claims, the Court could only hold First Citizens liable for the two alleged violations contained on First Citizens' preprinted form and not the illegibility of any figures.[14]

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action. 15 U.S.C. § 1640(e); Stipulation ¶¶ 1–3.

2. Defendants did not violate the Truth in Lending Act by (1) failing to disclose clearly and conspicuously that they did not require the purchase of credit life insurance, 15 U.S.C. § 1605(b); 12 C.F.R. § 226.-4(a)(5); (2) failing to properly describe or identify their security interests, 15 U.S.C. § 1638(a)(10); 12 C.F.R. § 226.8(b)(5); or (3) failing to print legibly all figures which constituted required disclosures. 12 C.F.R. § 226.6(a).

3. Defendants, therefore, are entitled to judgment in their favor. Accordingly, the Court will enter an Order of Dismissal.

---

14. Fort's attorney agreed with this conclusion at the hearing.